808 F.2d 571
 36 Ed. Law Rep. 1128
 STATE OF ILLINOIS By the ILLINOIS DEPARTMENT OF PUBLIC AID,
Plaintiff-Appellant,
v.
Otis R. BOWEN, Secretary of the United States Department of
Health and Human Services, and the United States
Department of Health and Human Services,
Defendants-Appellees.
 No. 85-2818.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 4, 1986.
Decided Dec. 17, 1986.
 
 Barbara L. Greenspal, Sp. Asst. Atty. Gen., Chicago, Ill., for plaintiff-appellant.
 James R. Goeser, Asst. Reg. Atty., Health & Human Services, Chicago, Ill., for defendants-appellees.
 Before COFFEY and FLAUM, Circuit Judges, and ESCHBACH, Senior Circuit Judge.
 COFFEY, Circuit Judge.
 
 
 1
 The plaintiff-appellant, the State of Illinois ("plaintiff" or "Illinois"), appeals from the district court's decision granting summary judgment in favor of the defendant, Otis R. Bowen,[1] Secretary of the United States Department of Health and Human Services ("HHS"), whose department denied the plaintiff reimbursement for monies expended in the plaintiff's special education programs under Title XX of the Social Security Act, 42 U.S.C. Secs. 1397-1397f. We affirm.
 
 I.
 
 2
 The facts of this case are not in dispute. The State of Illinois has, at least since 1963, provided special educational services to eligible handicapped children. Under the direction of the Illinois Office of Education ("IOE"), local school districts are directed to identify those children in need of special education. Although other state agencies may subsequently become involved in the treatment and education of the handicapped students, the IOE has the overall supervisory responsibility for the educational programs offered by any state agency. During the period of time relevant to this action, the Illinois Department of Children and Family Services ("DCFS") operated three residential schools for the education of handicapped children.[2]
 
 
 3
 The State of Illinois filed claims for participation under Title XX for educational services ($6,311,908) and for room and board ($2,792,804) in connection with the operation of the three residential schools during the period from the Title XX program's inception October 1, 1975 through March 30, 1980. After an audit was performed by the HHS for this time period, an HHS regional administrator initially disallowed all the claimed expenses. After the HHS Grant Appeals Board ("Board")[3] affirmed the disallowance on July 29, 1983, the decision became the Secretary's.[4] The district court granted the Secretary's motion for summary judgment and dismissed the action with prejudice upon the State's request of judicial review of the Secretary's disallowance. State of Illinois v. Heckler, 616 F.Supp. 620 (N.D.Ill.1985).
 
 
 4
 The State of Illinois raises two primary issues on appeal: (1) whether the educational program costs claims for the three residential schools were proper expenditures under Title XX arguing that the programs for the handicapped students were neither "generally available" in the local school districts nor operated by a state educational agency; and (2) whether the room and board expenses were proper claims under Title XX since the education of the handicapped students at the three schools constituted a "new placement" every academic year.[5]
 
 II.
 
 5
 A motion for summary judgment should be granted only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). An appellate court should reverse a grant of summary judgment upon the showing of a dispute over a material fact, however the plaintiff must "allude to specific facts which raise a genuine issue for trial." Linhart v. Glatfelter, 771 F.2d 1004, 1008 (7th Cir.1985). In reviewing a grant of summary judgment, an appellate court must view the record and the inferences drawn therefrom in the light most favorable to the party opposing the motion. United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962).
 
 
 6
 a. The disallowance of educational program costs.
 
 
 7
 Title XX of the Social Security Act ("Act"), 42 U.S.C. Secs. 1397-1397f, as amended and as pertinent during the audit period, provided for federal payments to the states for certain social services. We believe the district court in analyzing the legislative purpose of the Act gave a proper assessment of Congressional intent:
 
 
 8
 "When Congress passed Title XX it clearly intended to supplement, rather than to replace, state funding of social services. Act Sec. 1397b required states receiving Title XX funds to continue funding social services at prior levels. Title XX was structured to allow states to extend their services further than before, and Act Sec. 1397a reads like a congressional judgment that its supplemental resources were better spent on services in nonexistent or limited state supply than on services already generally available."
 
 
 9
 616 F.Supp. at 624.
 
 
 10
 The parties agree that Sec. 1397a(a)(1) of the Social Security Act, which was applicable during the relevant audit period, would ordinarily provide Title XX funding for the $6,311,908 in expenses in educational costs claimed by the State of Illinois. Section 1397a(a)(1) provided Title XX funding for a variety of services including:
 
 
 11
 services designed to meet the special needs of children, ... [and] the physically handicapped.
 
 
 12
 The then applicable Sec. 1397a(a)(10) compelled the Secretary to disallow reimbursement for the claimed expenses:
 
 
 13
 No payment may be made under this section with respect to any expenditure for the provision of any educational service which the State makes generally available to its residents without cost and without regard to their income.
 
 
 14
 (Emphasis added). During the time period in question, the Secretary's corresponding regulation stated (45 C.F.R. Sec. 228.43):[6]
 
 
 15
 FFP [Federal Financial Participation] is not available for any educational service made generally available through any State or local educational agency to residents of the state without cost and without regard to their income. To the extent a fee is imposed on any resident, FFP is available only for such fee.
 
 
 16
 (Emphasis added).
 
 
 17
 Whether or not the Illinois Department of Public Aid is entitled to reimbursement depends on the interpretation given to the phrase "generally available." Illinois argues that the Secretary misinterpreted the Social Security Act and its implementing regulations in construing what constitutes "generally available." The language of Sec. 1397a(a)(10) of the Social Security Act provides that funding will not be available for "any educational service which the State makes generally available to its residents." The United States Supreme Court has stated that absent a clear indication of legislative intent to the contrary, the language of the statute in question controls its construction. Ford Motor Credit Co. v. Cenance, 452 U.S. 155, 158 n. 3, 101 S.Ct. 2239, 2241 n. 3, 68 L.Ed.2d 744 (1981). See also 2A Sutherland Statutory Construction Secs. 45.02, 46.01 (4th ed. 1984).
 
 
 18
 The State of Illinois contends in its brief that the type of educational services provided at the three residential schools in question were not available through a state educational agency, nor were they generally provided by the local school districts. This contention is based on Illinois' self-serving interpretation of the Secretary's corresponding regulation (Reg. Sec. 228.43) to Sec. 1397a(a)(10) of the Social Security Act. Illinois contends that both "state" and "local" modify the term "educational agency," thus if services for the handicapped are neither made available through a state educational agency nor a local educational agency, they can then be reimbursed under Title XX. Since the Illinois Department of Children and Family Services was not an educational agency, and since the three schools were neither operated nor controlled by the local school districts, Illinois argues that the costs should be reimbursable. Illinois further asserts that the costs should be reimbursable because the educational programs provided at the three schools were not under the supervision and control of the IOE.
 
 
 19
 The district court, referring to the Secretary's comments at the time the regulation was promulgated,[7] found that:
 
 
 20
 "[T]he term 'educational' was inserted not to modify (in the limiting sense) 'state agency,' but rather to embrace local school districts within the agencies included in 'general availability' analysis. Thus 'educational' was intended to serve an expansive purpose, not a restrictive one as Illinois urges ..."
 
 
 21
 616 F.Supp. at 625. In short, Illinois' argument is in direct contradiction of the clear intention of the Social Security Act as set forth in the unambiguous language of the Act and its regulation and places organizational form over substance. We agree with the district court's finding as to the proper interpretation of the regulation.
 
 
 22
 The HHS Title XX Program Regulation Guide of October 1, 1975, further reduces Illinois' argument:
 
 
 23
 Federal financial participation is available for educational services only if (1) the service is included in the services plan and (2) residents of the State may not usually receive the service free from a public agency.
 
 
 24
 Title XX Program Regulation Guide at 2437. The three schools were operated by DCFS, a public agency, thus the educational services provided at the schools were clearly part of the state's free public education to the eligible handicapped children.
 
 
 25
 The plaintiff also argues that it complied with the requirements of the test in the Title XX Program Regulation Guide regarding whether a service is "generally available without cost and without regard to income." The three methods which could be utilized by a state were:
 
 
 26
 1. Total Population Test--an educational service is generally available if it is provided in school districts or other designated areas that have populations which total 75% or more of the total population of the area being tested (geographic area or entire State).
 
 
 27
 2. Target Population Test--an educational service is generally available if it is provided in school districts or other designated areas to 75% or more of the target population for whom the service is intended in the area being tested (geographic area or entire State).
 
 
 28
 3. School District Test Without Regard to Population--an educational service is generally available if it is provided in 75% or more of the school districts in the area being tested (geographic area or entire State).
 
 
 29
 Title XX Program Regulation Guide at 2438. The State of Illinois asks this court to construe the phrase "in school districts" as a requirement that services be provided within the boundaries of each district. As the district court noted, the Illinois Department of Public Aid's construction conveniently ignores language that adjoins "in school districts" such as "or other designated areas" and "(geographic area or entire state)." 616 F.Supp. at 626. Reading these phrases in conjunction with the accompanying language renders the construction of the State of Illinois meritless. The district court also noted that "school districts" as used in the Title XX Program Regulation Guide connotes "convenient geographical boundaries for defining the populations whose access to services is to be the measure of general availability." Id. (Emphasis in original).
 
 
 30
 We have been unable to discover any evidence, either offered by the plaintiff or in our independent review of the record, which requires that a student receive the social services within the boundaries of his geographic area or local district in order for them to be considered "generally available" to him.
 
 
 31
 We have carefully considered each of Illinois' arguments in light of the record before us regarding the construction of the phrase "generally available" but have determined them to be without merit. We agree with the district court that the Board was correct in its determination that the State of Illinois was ineligible for reimbursement of the $6,311,908 in educational costs incurred at the three DCFS schools since the special educational programs were generally available to the residents of Illinois.
 
 III.
 
 32
 Illinois argues that the Secretary incorrectly disallowed its Title XX claim for the first six months' room and board costs of the handicapped children attending each of the three residential schools each year based on an improper interpretation of what constitutes a "new placement." During the period in question (October 1, 1975--March 30, 1980), Sec. 1397a(a)(7)(E) of the Social Security Act prohibited the use of federal funds to reimburse states:
 
 
 33
 for the provision for room or board ... other than room or board provided for a period of not more than six consecutive months as an integral but subordinate part of a service described in paragraph (1) of this section.
 
 
 34
 When the Secretary originally implemented the aforementioned provision in a 1976 regulation, payments were allowed for room and board only (Reg. Sec. 228.41(a) (1976)):
 
 
 35
 when provided to an individual who is receiving a service of which room or board is an integral but subordinate part and then only for a period of not more than six consecutive months in any 12-month period and for not more than one 6-month period for any one episode or placement.
 
 
 36
 The same regulation was subsequently amended to allow payment only (id. (1978)):
 
 
 37
 as an integral but subordinate part of another service and then only for a period of not more than six consecutive months for any one placement.
 
 
 38
 "Placement" was defined in Reg. Sec. 228.41(d) (1978) as:
 
 
 39
 an uninterrupted period of time during which an individual takes up, or is placed in, residence in a facility other than his usual place of residence, for the purpose of undergoing a specific regimen of services or treatment according to a prescribed plan.
 
 
 40
 In reviewing the Secretary's interpretation of its regulation, the Administrative Procedure Act, 5 U.S.C. Sec. 706 (1982) mandates that we give a deferential standard of review. In Bedford Medical Center v. Heckler, 766 F.2d 321, 323 (7th Cir.1985), this court stated:
 
 
 41
 "When reviewing administrative decisions, federal courts are authorized to set aside agency decisions only when they: are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law; are contrary to constitutional right, power, privilege, or immunity; exceed statutory jurisdiction or falls short of statutory right; are reached in violation of established procedure; or are unsupported by substantial evidence...."
 
 
 42
 (Citations omitted).
 
 
 43
 Whereas the first issue concerned our interpretation of what constitutes "generally available," the second issue stands or falls on the construction given to the phrase "new placement." Illinois' basic argument is that every new academic year constitutes a "new placement." This assertion flies in the face of any reasonable interpretation of the evidence presented.
 
 
 44
 The plaintiff argues that whether FFP should be available for the room and board costs depends on whether or not the placement was made to undergo a "specific regimen of services or treatment according to a prescribed plan." The State of Illinois emphasizes that there is no established long-range plan for a child in any of the three schools, and, that when the student completes the treatment program at the end of the school year, he or she is discharged from the regimen of treatment and then a new, separate, and distinct placement procedure for the next phase of the treatment becomes necessary for the ensuing school year. In an attempt to lend further support to its argument that each year is a "new placement," plaintiff makes several assertions: (1) all placements, initial and subsequent, are voluntary and at the discretion of the parent or guardian, (2) no one school official nor the school itself can decide that services are no longer needed, (3) services are planned on both a semester and an annual basis, and (4) services may not be developed for the students prior to a decision that the past type of services rendered are no longer needed.
 
 
 45
 The Secretary argues that since room and board expenses are not generally reimbursable under Title XX, the exception in Sec. 1397a(a)(7)(E) of the Social Security Act (and its accompanying regulations) should be narrowly construed.[8] A narrow reading is supported by HHS's Guide to Federal Financial Participation Under Title XX which was issued in June, 1980[9] (the "Guide") 3.D.13:
 
 
 46
 If one placement ends and another placement begins for the same service or the same type of service, FFP is available for the cost of room or board during a second placement only if the individual was discharged from the prior placement because further treatment was not needed, not feasible, or not available and not for purposes of reentering the facility in order to begin another 6-month period of room or board. A new placement would begin, for example, if the person successfully completes a course of treatment, is discharged, or manages well in the community for a period of time until he or she has a relapse which necessitates a second placement.
 
 
 47
 Illinois also argues that the break each summer separates each placement, but we think a summer vacation is more accurately characterized as a normal interlude which divides the school's lengthy educational process into separate parts of a single placement. In order to constitute a new placement for which the first six months would be reimbursable, some event other than a summer break would need to take place. The Guide gives several possible examples that would lead to a new placement: if there is a successful completion of treatment, a discharge without the intention of reentering the service facility for further treatment, or the individual is able to successfully assimilate himself or herself in the community for a period of time until he or she has a relapse which requires a second placement.[10]
 
 
 48
 The Board found a significant continuity in treatment from year to year, thus belying Illinois' claim that each year represents a new placement for the students. The HHS auditors found that 482 of the 596 children attending the three residential schools during the 1978-79 school year, or 81%, also were in attendance the previous year. Of these 482, 246 or 51% had a continuous period of education at the schools for five years or more.
 
 
 49
 The district court stated, and we agree, that the Board's decision was thorough, well-reasoned, and supported with substantial evidence. The State of Illinois has failed to present any evidence that would persuade us to hold that the commencement of each new school year must be considered as a "new placement." The command of Bedford, the Board's reasonable decision, and the district court's careful consideration of all the arguments presented convinces this court to affirm the decision of the Board disallowing the plaintiff's request for reimbursement of the costs of room and board during the relevant period.
 
 IV.
 
 50
 We affirm the district court's granting of summary judgment.
 
 
 
 [1]
 During the pendency of this action, Otis R. Bowen was appointed to replace Margaret Heckler as Secretary of Health and Human Services. The Secretary of Health and Human Services has therefore been substituted as the named party pursuant to Fed.R.App.P. 43(c)
 
 
 [2]
 The three schools for the education of handicapped children were: (1) The Illinois Braille and Sight Saving School, now renamed the Illinois School for the Visually Impaired; (2) The Illinois School for the Deaf; and (3) the Illinois Children's Hospital School, now called the Illinois Children's School and Rehabilitation Center. There was little difference between the eligibility requirements for the three schools (except for the differences related to the types of handicaps involved). For example, the eligibility requirements of the Illinois Children's Hospital School were:
 "The Superintendent [of DCFS] may admit ... any child with a severe orthopedic handicap between the ages of five and 21 who resides in Illinois provided that:
 
 
 [1]
 The child has been examined by a qualified physician and is reported to be so severely handicapped by cerebral palsy, muscular dystrophy, spina bifida, or other orthopedic handicap that he requires special education and/or medical services, and
 
 
 [2]
 it has been found that the child can benefit from the programs offered, and
 
 
 [3]
 The responsible local education authority has recommended the child for admission because:
 a. No local education resources are available, or
 b. Local education resources are available but are unable to meet the special needs of the child, or
 c. The welfare of the child is jeopardized if he remains at home...."
 
 
 [3]
 The Secretary created the Board pursuant to his power to delegate authority and to prescribe regulations, 5 U.S.C. Sec. 301, in accordance with notice published at 38 Fed.Reg. 9906 (April 20, 1973)
 
 
 [4]
 The Secretary has delegated to the Board the responsibility for hearing and deciding a state's request for reconsideration of a disallowance. The decision of the Board constitutes final administrative action on the matter. 45 C.F.R. Sec. 201.14(d)(11)
 
 
 [5]
 The State of Illinois also argues that the Secretary's power concerning federal grants does not include the power to retroactively alter conditions on the grants, citing Pennhurst State School and Hospital v. Halderman, 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 695 (1981). We agree with the district court's conclusion and deem this argument without merit. 616 F.Supp. at 626 n. 12. We will thus limit our discussion to Illinois' two primary arguments
 
 
 [6]
 All further citations to 45 C.F.R. will take the form of "Reg. Sec. _____."
 
 
 [7]
 The Federal Register stated:
 Writers recommended deletion of "local educational agency." Since many States provide education through and at the discretion of local agencies, inclusion of such agencies is necessary to carry out the intent of the law.
 
 
 [40]
 Fed.Reg. 27352, 27353 (1975)
 
 
 [8]
 The district court agreed with the Secretary's construction. 616 F.Supp. at 628
 
 
 [9]
 We take note, as did the Board and District Court, that the June, 1980 edition of the Guide was not applicable in the years of the audit period from October, 1975, through March, 1980. Illinois offered the Guide as evidence before both the Board and the District Court in an attempt to support its interpretation. The Guide is included in the record for review
 
 
 [10]
 The plaintiff's own regulation concerning discharge of the handicapped students from residential schools indicate that the child's regimen ends only with graduation after secondary school or with a return to conventional education settings with an end to the benefit he can receive from the school