Robert E. LEE, Plaintiff-Appellee,

v.

NATIONAL CAN CORPORATION, Defendant-Appellant.

No. 81–2994.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 7, 1982.
Decided Feb. 8, 1983.

Barry Levenstam, Jenner & Block, Chicago, Ill., for defendant-appellant.

Rolland Stimson, Chicago, Ill., for plaintiff-appellee.

Before BAUER and POSNER, Circuit Judges, and HOFFMAN,* Senior District Judge.

---

* The Honorable Walter E. Hoffman, Senior Judge of the United States District Court for the Eastern District of Virginia, is sitting by designation.

BAUER, Circuit Judge.

Plaintiff-appellee Robert E. Lee brought this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, alleging that Defendant-appellant National Can Corporation refused to hire Lee because of his race. The district court, after a bench trial, entered judgment for the plaintiff, and awarded Lee $55,306.94 in back pay plus attorney's fees and costs.

National Can's principal claim on appeal is that Lee failed to prove that National Can refused him employment because of his race. Reversal is further urged on the grounds that: the district court's conclusion that Lee was a credible witness was clearly erroneous; the district court's refusal to allow cross-examination with regard to Lee's character for untruthfulness constituted reversible error; and the district judge impermissibly based his decision on his perception of the prevalence of race discrimination in employment and his unsupported presumption that National Can engaged in such discrimination.[1]

We share the district court's concern over the prevalence of race discrimination in employment. Our review of the record in this case, however, compels the conclusion that Lee failed to prove that National Can refused him employment because of his race. Therefore, we reverse.

## I. Background

The Equipment Manufacturing Division (EMD) of National Can Corporation is a small plant operated to provide machining services for National Can's production plants. Some time before May of 1977 the EMD facility began advertising for "Journeyman Machinists" with a minimum of five years experience.

On May 10, 1977, Lee, who is black, applied for a machinist's job at the EMD. Lee was required to complete a standard "National Can Corporation Application for Employment." The application called for

information concerning Lee's marital status, education, military service, and employment history. Lee completed the application, and signed it beneath a certification which reads: "I hereby certify that the information given by me in this form is true and correct and I agree that if I am employed, and it is found at any time that such information is false, I will be subject to dismissal without notice."

After completing his written application, Lee was interviewed by Michael Glynn, the personnel manager at the EMD. The interview with Glynn was designed to screen out those applicants with unsatisfactory job histories, or who lacked the necessary qualifications for the positions being filled. Although Glynn noted that Lee had not worked during the preceding nine months, he allowed Lee to continue with the application process.

The next stage of the EMD hiring process was a technical interview; Lee was to be interviewed by Joseph Turczak, the machine shop supervisor. Turczak, however, was tied up in a production meeting at the time Glynn finished Lee's screening interview. Because he did not know when Turczak would be available, Glynn offered Lee the choice of waiting or rescheduling the technical interview. Although Lee waited for some time, he left the EMD building without being interviewed by Turczak.

No decision was made with respect to Lee's application on May 10, 1977. Glynn testified at trial that Lee's application was considered "pending" on that date. Lee admitted that no one told him on May 10 that he would not be hired.

Nonetheless, on the following day, May 11, 1977, Lee filed an EEOC charge against National Can. In the charge, Lee alleged that the "shop foreman"[2] had interviewed white applicants during the time that Lee was waiting to see Turczak. The EEOC

---

1. National Can further urges that the district court's award of $55,306.94 back pay is excessive, and has no basis in the record. In light of our disposition of the liability issue, we need not reach the issue of back pay in this case.

2. The "shop foreman" was described by Lee as about five feet eight inches tall, with dark hair mixed with grey. Turczak, by contrast, is six feet two inches tall, with light colored hair.

charge further alleged that Lee had returned to the EMD on May 11, but had not been afforded an opportunity to meet with Turczak.[3] After an investigation of Lee's refusal to hire allegation, the EEOC concluded that there was not reasonable cause to believe that Title VII had been violated.

Sometime before June 7, 1977, National Can revised its help-wanted advertisement for EMD machinists; the new advertisement featured a mail-in coupon. Lee, who had begun working at Bell and Howell on May 15, 1977, answered the mail-in advertisement for EMD machinists using the name "Edward Lee." Glynn telephoned "Edward" and scheduled an interview for June 7, 1977.

Upon his arrival at the EMD on June 7, Lee filled out another application for employment with National Can. On this application, he gave his full name as "Edward Lee" and used a second social security number that he maintained under that name. When "Edward Lee" entered Glynn's office, Glynn recognized him as "Robert E. Lee" and compared the May 10 and June 7 applications. This comparison revealed differences in name, social security number, wife's name,[4] education, and employment history.

The disparities between the two applications alerted Glynn that at least one of the applications had been falsified. Pursuant to company policy expressed in the employee handbook, as well as on the application for employment, Glynn told Lee that he would not be hired because of the false information on one or both applications.

On August 28, 1978, Lee filed his complaint in this Title VII action against National Can. The case was tried without a jury in late 1981. The district court ruled for Lee, awarding him back pay, attorney's fees, and costs. We have jurisdiction over National Can's appeal pursuant to 28 U.S.C. § 1291.

**3.** At trial, Lee testified that he had telephoned the EMD on May 11, not returned in person as he claimed in the EEOC charge.

**4.** Although Lee has been divorced since 1953, the May 10 application indicated that he was

## II. Analysis

### A. The *Prima Facie* Case Under Title VII

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2, makes it an unlawful employment practice for an employer to "fail or refuse to hire ... any individual ... because of such individual's race ...."

The basic allocation of burdens and order of presentations of proof in a Title VII case was set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The Title VII plaintiff carries the initial burden of establishing a *prima facie* case of racial discrimination. The elements of the *prima facie* case are: (1) that the complainant belongs to a racial minority; (2) that the complainant applied and was qualified for a job for which the employer was seeking applicants; (3) that, despite his qualifications, the complainant was denied employment; and (4) that the position remained open and the employer continued to seek applications from persons with the same qualifications as the complainant. *Id.* at 802, 93 S.Ct. at 1824.

Once the Title VII plaintiff has established a *prima facie* case, the burden of production shifts to the employer to articulate some legitimate, nondiscriminatory reason for failing to hire the plaintiff. The ultimate burden of proving discriminatory treatment remains with the plaintiff. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

The district court below found that Lee had established a *prima facie* case of racial discrimination in hiring. Although National Can then articulated a legitimate nondiscriminatory reason for its failure to hire Lee, *i.e.,* the falsification of at least one of his applications for employment, the district

married to Juanita Lee; while on June 7 he wrote that he was married to Renee Esther Lee. Furthermore, despite his 1953 divorce, Lee filed joint income tax returns for 1977 and 1978 indicating that he was married to a Lois Lee.

court held that National Can had violated Title VII in rejecting Lee's application.

 Ordinarily, an appellate court will not set aside a trial court's findings, particularly where those findings are based primarily upon the credibility of witnesses. *Klockner, Inc. v. Federal Wire Mill Corp.,* 663 F.2d 1370 (7th Cir.1981); *Holbrook v. Institutional Ins. Co.,* 369 F.2d 236, 241–42 (7th Cir.1966). We are not bound by the district court's findings, however, when our review satisfies us that those findings are clearly erroneous. The Supreme Court, speaking to this standard of review in *United States v. United States Gypsum Co.,* 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948), stated that "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* at 395, 68 S.Ct. at 542. Our review of the record convinces us that such a mistake has been made here.

 The evidence in this case is inconsistent with the district court's finding that Lee met his burden of proving even a *prima facie* case of racial discrimination. It is undisputed that Lee belongs to a racial minority. Also undisputed is that National Can continued to seek journeyman machinists after June 7, 1977, the date Lee was refused employment. Proof of a Title VII violation, however, requires more.

In *Williams v. Boorstin,* 663 F.2d 109 (D.C.Cir.1980), *cert. denied,* 451 U.S. 985, 101 S.Ct. 2319, 68 L.Ed.2d 842 (1981), the District of Columbia Circuit noted that:

> In the guidelines for a *prima facie* case *McDonnell Douglas* suggested one critical element for evaluating Title VII claims of employment discrimination. That factor is one of adequate *qualification* for the job on the part of the complainant employee. Qualification on the part of the employee, then, would seem to be almost indispensable to a Title VII violation.

*Williams v. Boorstin,* 663 F.2d at 116 (footnotes omitted).[5] The record in this case lends no credence to the district court's finding that Lee was qualified to work as a journeyman machinist.

National Can was seeking employees who were skilled in the operation of a variety of machines including lathes, grinders, and drill presses. Lee's witnesses, however, testified to his competency in operating only two types of machines: milling machines and jig boring machines.

Lee's employment history further undercuts his contention that he is qualified as a journeyman machinist. This history is characterized by extended periods of unemployment, short-term jobs, and numerous firings. The district court chose to overlook Lee's unsatisfactory employment work record in finding that Lee was qualified for the position at National Can.[6] In doing so, however, the district court went beyond the

---

5. In *Williams* an employee of the Library of Congress was discharged when it was discovered that he had falsified his qualifications in order to obtain the job. The district court held that a Title VII violation had occurred. The District of Columbia Circuit, on facts analogous to those before us here, reversed, commenting:

> It is not disputed that the plaintiff had lied on his job application where he misrepresented his academic credentials; it is not disputed that he lied on occasion during his employment to carry out his masquerade; it is not disputed that he continued to lie even after his supervisors confronted him. The only issue is whether plaintiff was fired in violation of his civil rights.... We reverse the district court on the ground that the employment discrimination standard laid down by the Supreme Court in *McDonnell Douglas*

> *Corp. v. Green* is utterly inconsistent with a finding of discrimination in this case.

*Williams v. Boorstin,* 663 F.2d at 111 (footnotes omitted).

6. It is true, as the defendant insists, that Mr. Lee has a work record that apparently is far from acceptable by most companies. That is true. But, to this Court, that doesn't mean that Mr. Lee is not a qualified machinist, because this Court happens to know that many people are discharged wrongfully, they are discharged for race discriminatory reasons and others. We don't have time, nor should we look into the reasons why Mr. Lee was terminated all these various times.

*Lee v. National Can Corp.,* No. 78 C 3466 (N.D. Ill., Dec. 3, 1981) (oral opinion).

record in this case—noting that many people are discharged wrongfully for discriminatory reasons. Nothing in the record supports the district court's *sub silentio* conclusion that racial discrimination explains away Lee's inability to hold a job.[7]

Title VII does not compel employers to hire unqualified applicants with questionable employment histories. The Supreme Court described the policy underpinnings of Title VII in *McDonnell Douglas Corp. v. Green*, noting that "[t]he broad, overriding interest, shared by employer, employee, and consumer, is efficient and trustworthy workmanship assured through fair and racially neutral employment and personnel decisions." 411 U.S. at 801, 93 S.Ct. at 1823. Neither the testimony of Lee's witnesses as to his qualifications, nor his employment history, supports a conclusion that Lee would have contributed to "efficient and trustworthy workmanship" at National Can.

On the record before us, then, we are forced to conclude that Lee failed to prove his qualifications, and thus failed to establish a *prima facie* case of racial discrimination against National Can.

**B. The Burden of Proof Under *Texas Dep't of Community Affairs v. Burdine***

■ Even if Lee had been able to prove his qualifications as a journeyman machinist at trial, we would reverse the district court's finding of a Title VII violation. Establishing a *prima facie* case of discrimination is only the first hurdle for an employment discrimination plaintiff.

In this case, National Can responded to Lee's allegations by articulating a legitimate, nondiscriminatory reason for its failure to hire Lee. Lee was denied employment because Glynn discerned on June 7, 1977 that at least one of Lee's job applications had been falsified. In refusing to hire Lee, Glynn was following a nondiscrimina-

tory company policy.[8] Lee signed each application under a certification stating that the information was true, and that, if hired, Lee would be subject to dismissal without notice for the falsification.

After National Can articulated this reason for its adverse action, the burden of proving a Title VII violation remained with Lee. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). To prevail on his employment discrimination claim, Lee needed to prove that National Can's articulated reason for refusing to hire him was pretextual. *Id.* at 256, 101 S.Ct. at 1095. Thus, even if Lee had established a *prima facie* case, he would have had to go on to prove either that National Can's proffered explanation was not believable, or that National Can was more likely motivated by a discriminatory reason. *Id.* Yet, Lee did not introduce any rebuttal evidence, nor was the evidence introduced by Lee's case-in-chief sufficient to establish pretext.

The district court skirted the pretext issue by its finding that Lee was a victim of discrimination on May 10, 1977—the day he first made application for employment at the EMD. On May 10 Glynn had only one of Lee's applications to consider, and thus was unaware of any falsification of credentials. Thus, the articulated, nondiscriminatory explanation for National Can's failure to hire Lee could not effectively rebut a charge of discriminatory treatment on May 10.

The district court finding that Title VII was violated on May 10, 1977, however, is clearly erroneous. Glynn testified that Lee's application was considered pending on that date, while Lee testified that he was not told he would not be hired until June 7. Furthermore, Turczak's failure to interview

---

7. Although persons may be wrongfully discharged from employment, "[w]hat 'could have been' is never alone a sufficient foundation for a *finding* of what really 'was,' and what 'could have been' is the language of the district court on this point." *Williams v. Boorstin*, 663 F.2d

109, 115 (D.C.Cir.1980), *cert. denied*, 451 U.S. 985, 101 S.Ct. 2319, 68 L.Ed.2d 842 (1981).

8. Despite the district court's intimations to the contrary, nothing in the record suggests that National Can applied this policy discriminatorily.

Lee on May 10 is not the type of conduct prohibited by Title VII.[9]

### III. Conclusion

Our review of the record in this case leaves us with the firm conviction that Lee was not a victim of employment discrimination. The evidence supports neither the district court finding that Lee was qualified for the position at National Can, nor the concomitant conclusion that Lee proved a *prima facie* case of racial discrimination. Furthermore, even if Lee were qualified to perform the duties of a journeyman machinist, National Can articulated a nonpretextual, legitimate reason for its refusal to employ him; a reason which Lee failed to rebut.

The findings of the district court to the contrary are clearly erroneous and must be set aside. Accordingly, the judgment of the district court is

REVERSED.

---

**9.** In fact, National Can also advanced a legitimate, nondiscriminatory explanation for this— Turczak was unavailable because of a production meeting on the morning of May 10.