Jane ANDRE, Plaintiff–Appellant,

v.

The BENDIX CORPORATION,
Defendant–Appellee.

No. 87–1328.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 22, 1987.
Decided March 2, 1988.

Timothy J. Hartzer, Parker & Jaicomo, South Bend, Ind., for plaintiff-appellant.

Lawrence C. DiNardo, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for defendant-appellee.

Before WOOD, FLAUM, and EASTERBROOK, Circuit Judges.

FLAUM, Circuit Judge.

Plaintiff–Appellant, Jane Andre ("Andre"), appeals from the district court's judgment in favor of Defendant–Appellee, Bendix Corporation ("Bendix") under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2. The district court held that Andre successfully established a prima facie case of discrimination. The court also held, however, that Bendix proffered a legitimate, non-discriminatory reason for Andre's termination and that Andre failed to show by a preponderance of the evidence that these reasons were pretextual or that Bendix discharged her because of her sex. The district court therefore held that Bendix did not intentionally discriminate against Andre because of her sex. We conclude that the district court's application of the law was correct and that its findings of fact were not clearly erroneous. We therefore affirm.

I.

A.

This case has a long procedural history. Andre filed suit in 1982 alleging that Bendix discriminated against her on the basis of sex, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2. Following a two day bench trial, Chief Judge Sharp found that Bendix discriminated against Andre in violation of Title VII, awarded Andre $186,092 in lost wages, and ordered that she be reinstated. *Andre v. Bendix Corp.*, 584 F.Supp. 1485 (N.D. Ind.1984). Bendix appealed, and this court reversed the district court's judgment because we were "unable to follow the dis-

trict court's chain of reasoning from hostility to sex discrimination" and were "unable either to affirm the finding of sex discrimination or to determine that the finding of hostility [was] clearly erroneous." *Andre v. Bendix,* 774 F.2d 786, 801 (7th Cir.1985) (*"Andre I"*). We therefore remanded the case for a new trial.

On remand, a second bench trial was held before Judge Miller. This time the district court held that Andre failed to meet her burden of showing, by a preponderance of the evidence, either that her treatment and discharge were based on her sex or that Bendix's stated non-discriminatory reasons for her discharge were pretextual. As a result, the district court held that Bendix had not intentionally discriminated against Andre in violation of Title VII. Andre appeals the district court's judgment on the grounds that: 1) the district court erred in not finding pretext when it resolved all significant credibility conflicts in favor of Andre; 2) the court's failure to consider the cumulative effect of the evidence and to consider certain evidence was clearly erroneous; and 3) the district court erred in assuming that the sole basis of Andre's claim was her subjective belief that she was the victim of sexual discrimination.

### B.

Only a brief factual examination is necessary because both district court opinions and this court's opinion in *Andre I* set forth an exhaustive review of the facts. *See Andre I,* 774 F.2d at 788–91, 794–99; *Andre v. Bendix Corp.,* No. 82–C–77, slip op. at 1–26 (N.D.Ind. Nov. 10, 1986) [available on WESTLAW, 1986 WL 15351]; *Andre,* 584 F.Supp. at 1486–1502. In August of 1978, Bendix offered Andre a position as a manufacturing superintendent. As a result of Bendix's written offer, which contained an unusual discussion regarding Andre's logical progression within the company, the district court found that Andre understood that she would be in a supervisor's position for four to six months for training and would then be moved into a manufacturing manager's position. Bendix made this unusual offer because Andre had an extensive educational background and Bendix, as part of its affirmative action program, was very interested in hiring a woman of her caliber.[1]

Andre began working for Bendix in September, 1978. Because Bendix's organizational structure was changing, Andre's position was changed to general supervisor, but her salary grade remained that of a superintendent. Andre's immediate supervisor was Dale Franz.[2] Franz had five general supervisors reporting to him, Andre was the only female. Although Franz's initial evaluations of Andre were positive, their working relationship was always tense and quickly deteriorated. During the course of Andre's employment with Bendix, a number of incidents occurred in Andre's department which Franz felt she handled improperly. *See Andre I,* 774 F.2d at 788–91. As a result, Franz frequently filed critical memoranda in Andre's personnel file which he did not show to or discuss with Andre.[3] Franz's supervisor, Mr. Moore, also filed a number of negative evaluations of Andre in her personnel file.

The incident which led to Andre's discharge began on July 12, 1979. Franz thought that Andre's attire on that day was inappropriate for a supervisor and he sent her home to change her clothes. Andre did so and returned to work. Although

---

1. Andre claimed that Bendix's differential treatment of her application helped demonstrate that Bendix continuously treated her differently because of her sex in violation of Title VII. In *Andre I,* however, we held that Bendix's more favorable treatment of Andre during the application/hiring phase could not form the basis of a finding of intentional sex discrimination resulting from her eventual discharge. *Andre I,* 774 F.2d at 794.

2. As part of Bendix's reorganization, Franz was laterally transferred to the position of Manager of Manufacturing. In *Andre I* we stated that "[w]e fail to see how the lateral transfer of Franz could support a finding of sex discrimination." *Andre I,* 774 F.2d at 794.

3. We concluded in *Andre I* that these memoranda could not "raise or corroborate an inference of bias against Andre" because Franz filed similar memoranda in all of his employees' personnel files. *Andre I,* 774 F.2d at 795.

there is some dispute as to whether female hourly employees often wore tank tops similar to the one Andre wore, Franz objected to Andre's attire not because it was inappropriate for a woman, but because it was inappropriate for a supervisor. The next day Andre came to work wearing the same type of shirt she had worn the day before; Franz also believed that this shirt was inappropriate for a supervisor and in violation of Bendix's dress code. The dress code, however, did not address what type of shirts an employee was permitted to wear; it discussed only pants and shoes. Franz again asked Andre to go home and change. Andre asked Franz to specify what types of shirts she could and could not wear, but Franz refused to do so. Instead, Franz argued that her shirt was inappropriate for safety reasons. Andre challenged this assertion and went to see the plant's safety engineer. The safety engineer told Andre that her top did not pose any safety risks and he stated further that he would call Franz and inform him of that conclusion.[4]

Franz saw Andre wearing the same top after lunch. He called Andre into his office and asked the captain of the company's guards to accompany him. Franz testified that he asked the guard to go with him because he wanted an impartial witness to Andre's discharge. Franz told Andre that she was being discharged for insubordination and demanded her badge. Franz then had the guard escort her from the plant.[5]

After Andre's termination, a separation committee was formed to review her discharge. The committee first decided to change Andre's discharge to a suspension pending a review of her record. The committee then decided to terminate Andre, not for insubordination, but "due to [her] inability to perform the duties of her position."[6] Andre was formally notified of the committee's action on July 20, 1978.

On August 14, 1979 Andre filed a timely charge of sex discrimination with the Equal Employment Opportunity Commission ("EEOC") and the South Bend Human Rights Commission ("SBHRC"). After a hearing, the SBHRC concluded that there was insufficient evidence to find that Bendix had discriminated against Andre on the basis of her sex. The EEOC gave substantial weight to the SBHRC's findings and held that Andre failed to demonstrate reasonable cause to believe that she had been discriminated against because of her sex. As a result, the EEOC issued a notice of right to sue and Andre filed her complaint in district court.

## II.

### A.

Title VII of the Civil Rights Act of 1964 makes it an unlawful employment practice for an employer "... to discharge any indi-

4. At trial, the safety engineer, Dick Wyatt, testified that in his view Andre's shirt was inappropriate for an industrial environment and could pose a safety hazard. Wyatt further testified that he did not tell Andre what he thought about her shirt because he wanted to talk to Franz first. The district court specifically found that Wyatt's testimony was not credible. The court believed Andre and accepted her version of the conversation with Wyatt. We will not overturn a district court's credibility determination unless it is clearly erroneous. *Anderson v. Bessemer City*, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). The district court's finding is not clearly erroneous and is therefore accepted by this court.

In *Andre I* we determined that the safety reasons Franz proffered might well have been a pretext. We concluded, however, that the safety explanation did not show "that asking Andre to dress appropriately (in this case like a male

supervisor) was motivated by sex discrimination." *Andre I*, 774 F.2d at 797.

5. It is undisputed that Franz had never used a guard to escort any other discharged employee from the plant. In fact, when Franz discharged a male employee who had been caught slashing tires in the parking lot, he did not ask a guard to escort him from the building. In *Andre I*, however, we held that although the use of a uniformed guard "seems bizarre, there is really nothing about it to support an inference that a similarly situated male would have been treated differently." *Andre I*, 774 F.2d at 797.

6. In *Andre I* we held that "[t]here was plenty of evidence in the record before the committee to support its determination. Clearly, the reason given was not an after the fact pretext to cover up its own sex discrimination." *Andre I*, 774 F.2d at 798.

vidual, or otherwise to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's ... sex...." 42 U.S.C. § 2000e–2. Andre's claimed discriminatory treatment under Title VII resulted from her allegedly improper discharge. The ultimate factual inquiry in this type of Title VII case is whether or not the employer treated some employees less favorably than others because of impermissible factors. *United States Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711, 715, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983).

The Supreme Court set forth the allocation of the burdens of proof for a Title VII discriminatory treatment case in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The plaintiff has the initial burden of proving a prima facie case of discrimination by a preponderance of the evidence. *Id.* at 802, 93 S.Ct. at 1824. "A plaintiff alleging a discriminatory firing need show only that [s/he] was fired from a job for which [s/he] was qualified while others not in the protected class were treated more favorably." *Bellissimo v. Westinghouse Electric Corp.*, 764 F.2d 175, 179 (3rd Cir.1985), *cert. denied*, 475 U.S. 1035, 106 S.Ct. 1244, 89 L.Ed.2d 353 (1986). To meet her burden of establishing a prima facie case of discriminatory discharge, Andre must therefore show both that she was qualified for and satisfactorily performing the duties of her job. *Lee v. National Can Corp.*, 699 F.2d 932, 936 (7th Cir.), *cert. denied*, 464 U.S. 845, 104 S.Ct. 148, 78 L.Ed.2d 138 (1983).

If the plaintiff establishes a prima facie case, an inference of discrimination is raised; we assume that the employer's actions, if unexplained, were more likely than not the result of impermissible factors. *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978). Once the plaintiff proves a prima facie case, the burden shifts to the defendant to demonstrate a legitimate, non-discriminatory reason for its actions. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. If the defendant meets this burden, the plaintiff must then prove by a preponderance of the evidence that the defendant's asserted reason for its actions is in fact pretext. *Id.* at 804, 93 S.Ct. at 1825. The plaintiff can meet this burden by demonstrating either that the employer's explanation is unworthy of credence or that it is more likely that a discriminatory reason actually accounted for the employer's actions. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981); *Reeder–Baker v. Lincoln Nat'l Corp.*, 834 F.2d 1373, 1377 (7th Cir.1987); *Benzies v. Illinois Dep't of Mental Health*, 810 F.2d 146, 148 (7th Cir.), *cert. denied*, —— U.S. ——, 107 S.Ct. 3231, 97 L.Ed.2d 737 (1987). The plaintiff, however, always retains the ultimate burden of persuading the finder of fact that the defendant intentionally discriminated against him or her. *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093.

### B.

 The district court held that Andre met her initial burden of establishing a prima facie case of discriminatory treatment because she proved that she was a member of a protected class, she was qualified for her position and was satisfactorily performing the duties of that position, she was discharged from her job, and was treated disparately. *Andre v. Bendix Corp.*, No. 82–C–77, slip op. at 27 (N.D.Ind. Nov. 10, 1986). The burden of production then shifted to Bendix to put forth a legitimate non-discriminatory explanation for Andre's firing. Bendix's preferred explanation was that Andre was not really performing her job satisfactorily and did not demonstrate the technical ability or the ability to manage and communicate effectively necessary for the successful performance of her duties. The district court held that this explanation satisfied Bendix's burden of production and therefore rebutted the presumption of discrimination created by Andre's prima facie case. *Id.* at 28–29. The initial presumption of discrimination therefore dropped from the case. *Burdine*, 450 U.S. at 255, 101 S.Ct. at 1094–95.

The burden then shifted back to Andre to prove either that Bendix's proffered reason for her discharge was pretextual or that it was more likely that a discriminatory reason actually accounted for her termination. This burden merged with Andre's ultimate burden of proving that she was the victim of intentional discrimination. *Id.* at 256, 101 S.Ct. at 1095.

The district court evaluated all of the evidence and concluded that Andre had not met this final burden. The district court held that none of the evidence presented indicated that a male employee involved in similar incidents would have been treated differently than Andre. *Andre*, No. 82-C-77, slip op. at 31. The district court therefore concluded that although Andre had established a prima facie case, she did not present enough evidence to corroborate her claim that her sex was the real reason for her discharge. As the district court correctly noted, "Andre's perception of the incidents which led to her discharge, without more, cannot suffice to demonstrate that Bendix's decision to terminate her was based on her sex." *Id. See Elliott v. Group Medical and Surgical Services,* 714 F.2d 556, 567 (5th Cir.1983), *cert. denied,* 467 U.S. 1215, 104 S.Ct. 2658, 81 L.Ed.2d 364 (1984) (a subjective belief of discrimination, no matter how genuine, cannot be the sole basis for a finding of discrimination). Because the court properly found that Andre did not present enough evidence to successfully respond to Bendix's proffered non-discriminatory explanation for her discharge, the district court correctly held that Andre failed to meet her burden of demonstrating by a preponderance of the evidence either that Bendix's proffered explanation for her discharge was pretextual or that her treatment and discharge were based on her sex.

### III.

■ The district court's finding that Bendix did not intentionally discriminate against Andre on the basis of her sex is a finding of fact. *Anderson v. Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). As a result, our review of the district court's decision is limited by Federal Rule of Civil Procedure 52(a) which provides that findings of fact shall not be set aside unless clearly erroneous. A finding is clearly erroneous "when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). Under this standard

[i]f the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.

*Anderson,* 470 U.S. at 573–74, 105 S.Ct. at 1511–12.

There are at least two plausible views of the evidence in this case. In light of our opinion in *Andre I,* we cannot say that the district court's finding that Bendix did not intentionally discriminate against Andre was clearly erroneous. The district court stated that it had a "hunch" that the hostility Andre experienced was based on her sex, but it concluded that there was simply not enough evidence to corroborate that hunch. *Andre v. Bendix Corp.,* No. 82-C-77, slip op. at 35 (N.D.Ind. Nov. 10, 1986); *see also Andre v. Bendix Corp.,* 774 F.2d 786, 799 (7th Cir.1985). We cannot say that this conclusion was clearly erroneous. We therefore affirm.