Betty DOCKTER, Plaintiff,

v.

RUDOLF WOLFF FUTURES, INC., a
New York corporation, Defendant.

No. 86 C 4236.

United States District Court,
N.D. Illinois, E.D.

April 25, 1988.

Gregory X. Gorman, H. Candace Gorman, Robert J. Paul, Gorman & Gorman Chicago, Ill., for plaintiff.

Matthew J. Iverson, Abramson & Fox, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

This Title VII case involves the hiring and eventual firing of plaintiff Betty Dockter ("Plaintiff") by defendant Rudolf Wolff Futures, Inc. ("Wolff"). Plaintiff claims that she was harassed and ultimately fired because she was a female employee who refused to acquiesce to the sexual advances of Wolff employee James G. ("James"). She seeks relief pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII") as well as Illinois state law. This court has jurisdiction pursuant to 42 U.S.C. § 2000e–5(f)(3) and this court's pendent jurisdiction. Trial was held before this court in October, 1987. For the reasons set forth below in this court's findings of fact and conclusions of law, this court finds for Wolff on all counts of the complaint.

## FINDINGS OF FACT

Plaintiff is an attractive female in her mid-twenties who came from Idaho to Chicago, Illinois, some years ago. She has a ninth-grade education, with a concomitant level of diction and oral presentation, and a somewhat querulous or testy personality. She was working as a recruiter for a local school, the National Education Center, and as a bartender for a local pub, the Chicago Bar & Grill, when she met James in late 1984.

Wolff is a commodity brokerage firm engaged in buying and selling commodity future contracts. Throughout the time period relevant to this case, James was a manager at one of Wolff's two Chicago offices.[1] He was responsible for supervising the sales office along with his co-managers Richmond Flowers ("Flowers") and, beginning in February, 1985, Steve Bernard ("Bernard"). James is a man of above average education, intelligence and appearance, and demonstrates that he is well aware of these assets.

James was also a frequent after-hours customer at the Chicago Bar & Grill. In late 1984, he met Plaintiff while she was bartending. The two engaged in some mutual flirting and courting whenever their paths would cross at the pub.

In early 1985, James was seeking an administrative assistant and, in an effort to impress Plaintiff and secure her company in the future, he offered her the job at a salary level far in excess of what she was then making, or was likely to make in the foreseeable future, $25,000 per annum. Plaintiff accepted, telling James that she was a high school graduate, that she knew how to type, and that she would be willing to learn how to use the office's word processing machines.

Plaintiff began working for Wolff on January 27, 1985. For the first few weeks, James, as he occasionally did with other female employees at the office, made sexual overtures to—in the vernacular of the modern generation, "came on to"—her. Although Plaintiff rejected these efforts, her initial rejections were neither unpleasant nor unambiguous, and gave James no reason to believe that his moves were unwelcome.

By the end of her third week with Wolff, James began to realize that his preening, primping and posturing, so welcome prior to his hiring Plaintiff, were no longer desired. After one misguided act, in which he briefly fondled Plaintiff's breast and was reprimanded by her for doing so, he accepted his defeat and terminated all such conduct.

---

1. Until February, 1985, James' office was actually owned by another commodity firm, Revco, Inc. However, because Wolff's purchase of this office in February, 1985, in no way affects the outcome of this case, this court will refer to the office as belonging to Wolff throughout.

Meanwhile, Plaintiff was suffering defeat of another sort. Incapable of performing even the simplest of tasks assigned to her by James and the other personnel in the office, she became unhappy and unpleasant. Eventually, after a number of Wolff employees had tried unsuccessfully to train her to operate the word processing equipment, only to be told that the fault lay in the machine rather than the operator, she became unwelcome as well.

By April, 1985, both Flowers and Bernard had decided to terminate Plaintiff because of her incompetence and attitude. Nevertheless, until nearly the day she was fired, James continued to defend her and to request that she be given more time to adjust. Finally, on April 22, 1985, Flowers and Bernard, acting without the physical presence or other influence of James, informed Plaintiff that she was fired. Neither at this time, nor at any time during her employment with Wolff, did Plaintiff say anything about the sexual harassment she now claims to have suffered at James' hands.

Plaintiff, within 180 days of the termination, filed charges with the Equal Employment Opportunity Commission ("the Commission") alleging that Wolff discriminated against her based on her sex. Within 90 days of receiving a Notice of the Right to Sue from the Commission, she filed this lawsuit.

## CONCLUSIONS OF LAW

### The Title VII Claim

The Supreme Court has made clear that, in cases involving alleged sexual harassment, "a violation of Title VII may be predicated on two types of sexual harassment." *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). First, if a plaintiff can show that her employer conditioned any tangible economic benefit of her employment on her accepting his sexual overtures—the so-called "quid pro quo"—she can recover irrespective of the frequency of the sexual advances or the degree of the punishment imposed. *See id.* 106 S.Ct. at 2404–05. Second, even if an employer does not alter the plaintiff's tangible terms and conditions of employment, a plaintiff may recover under Title VII if her employer's sexual advances and other sex-based discriminatory treatment were so severe as to "create[] a hostile or abusive work environment." *Id.* at 2405–06; *Scott v. Sears, Roebuck & Co.*, 798 F.2d 210, 213–14 (7th Cir.1986). *See also Bohen v. City of East Chicago, Ind.*, 799 F.2d 1180, 1187 (7th Cir.1986). Under either theory, however, the plaintiff bears the burden of persuading the finder of fact that her employer discriminated against her. *See Andre v. Bendix Corp.*, 841 F.2d 172, 175–76 (7th Cir.1988).

In seeking to sustain her burden, Plaintiff asks this court to focus on the *"prima facie* case method" established by the Supreme Court for a wide variety of discrimination cases. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In so doing, Plaintiff misconstrues the function of that analysis.

The analysis was established to enable plaintiffs to initially satisfy their burden of showing discriminatory treatment even where direct evidence of such mistreatment is not available. *See United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 714–15, 103 S.Ct. 1478, 1481–82, 75 L.Ed.2d 403 (1983). In setting forth the analysis, the Court recognized that it can often be extremely difficult for a plaintiff who has been mistreated on the basis of his or her race, sex or other protected trait, to prove by direct evidence that he or she has indeed been subjected to differential treatment *because* of this trait.

When, however, a female plaintiff claims that she has been the victim of sexual harassment, the need for the *"prima facie* case method" largely disappears. If an employer subjects a female employee to unwelcome sexual advances, and then, after those advances are rejected, imposes some tangible detriment on the employee, the latter need not establish that she was "qualified for her position and was satisfactorily performing the duties of that position" in order to establish a *prima*

*facie* case. *Compare Andre v. Bendix Corp.*, 841 F.2d at 175. The rejection and subsequent penalty suffice to require the employer to come forward with a satisfactory non-discriminatory reason for penalizing the worker. *See United States Postal Service Board of Governors v. Aikens*, 460 U.S. at 715, 103 S.Ct. at 1482 ("The prima facie case method ... is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination."). Likewise, if an employer's sexual advances are so severe as to create a hostile working environment for a female worker, the analysis is irrelevant; no legitimate non-discriminatory reason for such treatment could possibly be proffered. *See Bohen v. City of East Chicago, Ind.*, 799 F.2d at 1187.

Thus, rather than tarrying with "shifting-burdens" and the like, this court will move directly to the ultimate questions raised by Plaintiff's Title VII claims: (1) whether Plaintiff was fired because she rejected James' sexual advances; and (2) whether, even if she was not, James' treatment was so severe that it created a hostile and abusive working environment.

### 1. *Quid Pro Quo.*

■ The evidence presented at trial clearly established that Plaintiff was terminated from her position with Wolff, not because she refused James' sexual overtures in the first few weeks of her employment, but instead because, even long after these advances had entirely ended, she was unable to competently perform the jobs to which she was assigned. *A fortiori*, Plaintiff has utterly failed to satisfy *her* burden of proving that she was terminated because of her sex.

**2.** Since this court has concluded that Plaintiff was not the victim of sexual harassment or discrimination, it will not undertake the "rather abstract" inquiry established by the Supreme Court for determining whether Wolff would have been liable for such misconduct had it in fact occurred. *See Meritor Savings Bank v. Vinson*, 106 S.Ct. at 2408; *Scott v. Sears,*

### 2. *Hostile Working Environment.*

■ Plaintiff has also fallen far short of establishing that James' sexual advances created a hostile working environment which intangibly altered the "terms and conditions" of her employment. The few incidents all occurred within the first few weeks of her work at Wolff, and were, with the single exception of the breast-fondling episode, essentially unoffensive and not even clearly unwelcome. Once James learned that the relationship he had established with Plaintiff before she came to work for him had come to an end, he terminated all such sexual improprieties. While this court in no way suggests that James conduct was proper, neither can it find that it amounted to sexual harassment under the Civil Rights laws. *See Scott v. Sears, Roebuck & Co.*, 798 F.2d at 213–14 (to prove a hostile working environment, plaintiff must show that the harassment was "severe, debilitating or pervasive").[2]

### *The State Law Claims*

Plaintiff also claims that James committed an assault and battery against her when he fondled her breast and otherwise touched her during his sexual advances. She correctly notes that, under Illinois law as in most other jurisdictions, an assault and battery need not involve force or peril; any intentional act which creates the apprehension of, and results in "an unpermitted contact[] with the plaintiff's person" gives rise to liability. *Prosser on Torts*, § 9 at 34–35, 37–38 (4th ed.); *see also Webb v. Jewel Companies, Inc.*, 137 Ill.App.3d 1004, 92 Ill.Dec. 598, 485 N.E.2d 409 (1985).

■ This court agrees with Plaintiff that James committed an assault and battery against her on a few occasions during the course of their relationship. Although Plaintiff's allegations of sexual harassment are exaggerated and overblown, it does

*Roebuck & Co.*, 798 F.2d 215 (7th Cir.1986) (declining to hypothetically address liability of employer where employee not liable). The court merely notes that Plaintiff failed to prove that any other supervisory officials at Wolff were aware of James' sexual advances or condoned or participated in them.

appear that, even after Plaintiff had decided she did not want James courting her any longer and made this decision known to him, the latter did, for a short period, continue to pat her, kiss her and, on a single occasion, fondle her breast. These acts constitute intentional torts under Illinois law.

Nevertheless, Plaintiff cannot succeed on her assault and battery claim. The only defendant in this lawsuit is James' employer, Wolff. Thus, to recover on her state claims, Plaintiff must hold Wolff accountable for James' conduct. This she cannot do. It is clearly established that, under Illinois law, an employer can be held liable for the intentional torts of its employees, even supervisory employees, *only* "where such acts are committed in the course of employment and in furtherance of the business of the employer." [3] *Rubin v. Yellow Cab Co.*, 154 Ill.App.3d 336, 338, 107 Ill.Dec. 450, 507 N.E.2d 114 (1987); *Webb v. Jewel Companies, Inc.*, 137 Ill.App.3d at 1006, 92 Ill.Dec. 598, 485 N.E.2d 409. *See also Awe v. Striker*, 129 Ill.App.2d 478, 263 N.E.2d 345 (1970). The evidence in this case demonstrates that James' sexual misbehavior was committed entirely for his own enjoyment and benefit; he neither intended to nor did benefit Wolff in any way by his actions. Accordingly, this court finds that Wolff is not liable to Plaintiff for James' intentional torts.

## CONCLUSION

Based on this court's findings of fact and conclusions of law, this court rules that Defendant Rudolf Wolff Futures, Inc. is entitled to judgment in its favor on all counts of the complaint. Accordingly, judgment is entered for Defendant.

---

**3.** Aside from *respondeat superior,* an employer may also be liable for failing to properly supervise employees if this failure results in an injury. *See Rubin v. Yellow Cab Co.,* 154 Ill.App.3d at 340, 107 Ill.Dec. 450, 507 N.E.2d 114. However, Plaintiff did not allege nor seek to prove that Wolff should be held liable for negligently failing to supervise James. Moreover, the evidence gives this court no grounds to believe that other supervisory officials at Wolff knew or should have known of James' conduct. *See id.*