962 F.2d 608
 58 Fair Empl.Prac.Cas. (BNA) 1356,
58 Empl. Prac. Dec. P 41,455, 22 Fed.R.Serv.3d 900
 Loretta D. KIZER, Plaintiff-Appellant, Cross-Appellee,
v.
CHILDREN'S LEARNING CENTER, a not for profit corporation,
Scott R. Erwin, Loretta Littig, Kathy Lockhard and
Lynne T. Switzky, Defendants-Appellees,
Cross-Appellants.
 Nos. 90-1060, 90-1403.
 United States Court of Appeals,
Seventh Circuit.
 Argued June 7, 1991.
Decided April 29, 1992.
 
 Edward F. Diedrich, DeKalb, Ill., Robert S. Wilson (argued), Sycamore, Ill., for plaintiff-appellant, cross-appellee.
 Jerome C. Shapiro, Kankakee, Ill., Scott R. Erwin, DeKalb, Ill., James R. Buck (argued), Klein, Stoddard & Buck, Sycamore, Ill., for defendants-appellees, cross-appellants.
 Before COFFEY, FLAUM, and MANION, Circuit Judges.
 COFFEY, Circuit Judge.
 
 
 1
 The plaintiff appeals the district court's entry of summary judgment against her on her Title VII racial discrimination claims, and the defendants cross-appeal the denial of Rule 11 sanctions. Affirm.
 
 I. FACTS AND PROCEEDINGS BELOW
 
 2
 Plaintiff Loretta Kizer, a black female, initially filed charges of employment discrimination with the Equal Employment Opportunity Commission in October of 1986 after being terminated from her position as a teacher's aide at the defendant Children's Learning Center ("CLC"). A "right to sue" letter was issued by the EEOC to the plaintiff on December 23, 1986, and the plaintiff filed suit in the district court alleging discrimination in employment based on race under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e(17), under 42 U.S.C. § 1981 and under 42 U.S.C. § 1985(3).[1] Pursuant to 28 U.S.C. § 636(b)(1)(B), the district court designated a magistrate judge to submit proposed findings of fact with a recommendation on the defendants' motion for summary judgment.[2]
 
 
 3
 The plaintiff was discharged from her position as a teacher's aide at CLC (an Illinois non-profit corporation located in DeKalb, Illinois) after receiving two written warnings. The validity of the first warning is in dispute. According to the plaintiff's affidavit, on December 18 or 19, 1985, a fire drill was held at the CLC, and during the drill the plaintiff's son, who was under the care of other employees at CLC, was left inside the premises without adult supervision.[3] This allegedly caused the plaintiff "grave mental anguish and emotional distress." According to the plaintiff's affidavit in support of her racial discrimination complaint, she stated she had received permission to leave CLC and denied that she had to be sent home. The defendants admit that Kizer's child was accidently left in the building unattended during a fire drill, but contend that the fire drill incident occurred nearly a year and a half earlier on August 4, 1984, and not on the date the plaintiff-appellant states. On December 18, 1985, defendant Lynne Switzky, an executive director of CLC and one of the plaintiff's supervisors, issued a written warning to the plaintiff which stated "Employee was upset and unable to work with children. She had to be sent home." The defendants deny that the plaintiff requested and received permission to leave on December 18, 1985, as a result of the alleged fire-drill incident. The magistrate judge found that an issue of fact existed as to this written warning, but it was immaterial because CLC's official policy requires only one written warning before dismissing an employee, and Kizer received two written warnings before she was terminated.
 
 
 4
 The second warning involved a written warning issued by Switzky to the plaintiff on January 13, 1986, as the result of the plaintiff's failure to follow CLC's call-in procedure to report that she would be late for work that day. In spite of the fact that employees are required to call in by 7:15 a.m. when they are unable to report to work in a timely fashion, the warning stated, "Employee called at 8:00 a.m. to report that she would not be in to work because of a sick child."[4] The plaintiff was subsequently terminated from her employment at CLC on January 24, 1986, with a letter stating that the plaintiff was being terminated because she had been the recipient of two written warnings. At the time of Kizer's discharge, CLC employed approximately sixty employees, six of whom were black.[5] The plaintiff thereafter brought suit alleging her termination was the result of racial discrimination. The plaintiff alleges that she was discriminated against because white employees at CLC also violated the call-in procedures and were not terminated, her staff photograph was mutilated, she was intentionally misled as to CLC's grievance procedures, she was treated less favorably than non-black CLC employees, and her black child was left unsupervised in the building during a fire drill. The defendants produced evidence that seven employees (five whites and two blacks) were also discharged for failing to follow the call-in procedure. After a review of the record, including the magistrate judge's report and recommendation, the district court adopted the report and recommendation and entered summary judgment in favor of the defendants.
 
 II. ISSUES FOR REVIEW
 
 5
 The plaintiff argues the district court erred in granting summary judgment for the defendants because there were genuine issues of material fact contained in her Title VII claim. The plaintiff also alleges that she carried her burden of establishing a prima facie case of discriminatory discharge. The defendants cross-appeal, alleging that the trial court improperly denied their motion for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure.
 
 III. DISCUSSION
 A. Summary Judgment
 
 6
 The plaintiff Kizer contends that it was error for the district court to enter summary judgment because there were genuine issues of material fact relating to her Title VII claim of racial discrimination for an allegedly improper discharge. Specifically, Kizer contends that "[s]ince there is a genuine issue as to material fact as to the first warning, ipso facto, there is a genuine issue as to material fact as to the basic cause of the firing of the Plaintiff since there wouldn't have been a firing on the second alone without the first." "An appellate court should reverse a grant of summary judgment upon the showing of a dispute over a material fact, however, the plaintiff must 'allude to specific facts which raise a genuine issue for trial.' " State of Illinois by Illinois Dep't of Public Aid v. Bowen, 808 F.2d 571, 573-74 (7th Cir.1986) (quoting Linhart v. Glatfelter, 771 F.2d 1004, 1008 (7th Cir.1985)). Furthermore, an appellate court's review of a grant of summary judgment requires the court to view the record and the inferences drawn therefrom in a light most favorable to the party opposing the motion. Id.
 
 
 7
 Kizer argues that she established her prima facie case and that there was a genuine issue of material fact that the district court was required to resolve regarding whether she had received a valid first warning when she was sent home on December 18, 1985. However, the plaintiff erroneously assumes in her argument that a dispute over the first warning causes a summary judgment based upon the second warning to be inappropriate. It is undisputed that Kizer received a second written warning approximately six weeks later for failing to follow CLC's call-in procedures, and the CLC policy only requires one written warning prior to dismissal. Since the district court relied upon the second warning only, any issue of fact regarding the first warning is immaterial.
 
 B. Discriminatory Discharge
 
 8
 The plaintiff argues that her termination for receiving two written warnings was pretextual and that the real reason she was discharged was on account of her race. Kizer "contends that she was the victim of race discrimination in that other employees at CLC have violated the call-in procedures and have not been fired." The plaintiff also alleges that other evidence of discrimination against her includes the mutilation of her staff photograph, she was intentionally misled as to CLC's grievance procedures, she was treated less favorably than non-black CLC employees in terms of work schedules and work conditions, and that her black child was left in the center unsupervised during a fire drill.
 
 
 9
 Title VII of the Civil Rights Act of 1964 makes it unlawful for any employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's race...." 42 U.S.C. § 2000e-2(a)(1). This court has previously discussed what a plaintiff alleging a discriminatory discharge must prove:
 
 
 10
 "The Supreme Court set forth the allocation of the burdens of proof for a Title VII discriminatory treatment case in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817 [36 L.Ed.2d 668] (1973). The plaintiff has the initial burden of proving a prima facie case of discrimination by a preponderance of the evidence. Id. at 802, 93 S.Ct. at 1824. 'A plaintiff alleging a discriminatory firing need show only that [s/he] was fired from a job for which [s/he] was qualified while others not in the protected class were treated more favorably.' Bellissimo v. Westinghouse Electric Corp., 764 F.2d 175, 179 (3rd Cir.1985), cert. denied, 475 U.S. 1035, 106 S.Ct. 1244 [89 L.Ed.2d 353] (1986). To meet her burden of establishing a prima facie case of discriminatory discharge, [the plaintiff] must therefore show both that she was qualified for and satisfactorily performing the duties of her job. Lee v. National Can Corp., 699 F.2d 932, 936 (7th Cir.), cert. denied, 464 U.S. 845, 104 S.Ct. 148 [78 L.Ed.2d 138] (1983)."
 
 
 11
 Andre v. Bendix Corp., 841 F.2d 172, 175 (7th Cir.), cert. denied, 488 U.S. 855, 109 S.Ct. 144, 102 L.Ed.2d 116 (1988) (citations omitted) (emphasis added). Thus, in order to meet her burden of establishing a prima facie case of discriminatory discharge, Kizer "must therefore show both that she was qualified for and satisfactorily performing the duties of her job." Id.
 
 
 12
 As we noted in the previous section, the defendants presented evidence that the plaintiff was not satisfactorily performing her job as a teacher's aide in that she received a written warning as a result of not following CLC's call-in procedure. Moreover, the defendants produced evidence that seven individuals besides the plaintiff (five whites and two blacks) were also fired for failing to follow CLC's call-in procedures. Nonetheless, the plaintiff contends that the figures CLC submitted regarding the seven other employees who were fired for violating the call-in procedure do not defeat her claim of racial discrimination because CLC did not include how many times the fired employees violated the call-in procedure. However, this argument is without merit because the plaintiff bore the burden of establishing a racially motivated decision, and she failed to present any evidence demonstrating that any other employees who violated the call-in procedure were in fact retained. See id. The plaintiff's bare allegation that other employees who violated the call-in procedures were not fired is insufficient to demonstrate that the defendants' decision to discharge her was racially motivated.[6]
 
 
 13
 The plaintiff cites several other examples of allegedly discriminatory conduct on the part of CLC which she believes demonstrates that the defendants' decision to fire her was racially motivated. For instance, Kizer alleges that discrimination is demonstrated by CLC allowing her staff photograph, which someone defaced, to remain on exhibition for too long a period of time (the photograph of plaintiff had its eyes blacked out and had been torn). However, the plaintiff's photograph was only one of three defaced, the other two being that of a white teacher and a Hispanic teacher's aide. Moreover, the plaintiff did not submit any evidence or proof as to whom she believed defaced the photograph or how CLC was involved. Indeed, a child at CLC could have been responsible for the defacement. The plaintiff also cites the fact that her black child was the only child left in the center unsupervised during a fire drill as further evidence of discrimination. However, the plaintiff does not allege, nor is she able to demonstrate, how her child's color was related to his being left in the building during the drill. Moreover, the plaintiff claims that she was misled as to CLC's grievance procedure. However, Kizer admitted that she was given material by CLC which described the grievance procedures. In addition, the plaintiff received a letter from defendant Kathy Lockhard, the chairman of the personnel committee of CLC, that outlined the grievance procedures. Finally, she has submitted no evidence on how she was treated less favorably than non-black CLC employees in terms of work schedules and work conditions other than her allegation that her hours had been decreased and her schedule altered. Mere allegations standing alone are insufficient to support her claim of discriminatory firing.
 
 
 14
 In sum, we hold that the plaintiff-appellant has failed to make out a prima facie case of racial discrimination under Title VII because she is unable to demonstrate that despite her violation of CLC's call-in procedure, she was doing the job well enough to meet her employer's legitimate expectations and, nonetheless, she was discharged. See Andre, 841 F.2d at 175 ("To meet her burden of establishing a prima facie case of discriminatory discharge, [a plaintiff must] show both that she was qualified for and satisfactorily performing the duties of her job.") Further, we agree with the magistrate judge and the district court that the plaintiff is unable to establish through evidence that her termination was racially motivated. Instead of pointing to specific facts which raise a genuine issue for trial, the plaintiff engages in nothing but supposition and conjecture in an attempt to build a case of racial discrimination: "[A] subjective belief of discrimination no matter how genuine, cannot be the sole basis for a finding of discrimination." Andre at 176 (citing, Elliott v. Group Medical & Surgical Service, 714 F.2d 556, 567 (5th Cir.1983), cert. denied, 467 U.S. 1215, 104 S.Ct. 2658, 81 L.Ed.2d 364 (1984)).
 
 C. Rule 11 Sanctions
 
 15
 The defendants cross-appeal the district court's refusal to award Rule 11 sanctions. In denying the defendants' motion for Rule 11 sanctions, the district court noted that "[w]hile Kizer's claim may have been attenuated, it is not clear to this court that no reasonable attorney would have believed that there was enough evidence to make a case of race discrimination."
 
 
 16
 "We review the district court's ruling on Rule 11 sanctions for 'abuse of discretion.' " Harsch v. Eisenberg 956 F.2d 651, 661 (7th Cir.1992) (quoting Mars Steel Corp. v. Continental Bank, N.A., 880 F.2d 928, 930 (7th Cir.1989)). The abuse of discretion standard applies "whether sanctions were imposed or not." Mars Steel Corp., 880 F.2d at 930. Rule 11 "is a law imposing sanctions if counsel files with improper motives or inadequate investigation." Id. at 932 (emphasis added).
 
 
 17
 The defendants contend that because the district court determined that nothing in the record supported a claim of race discrimination for purposes of granting defendants' motion for summary judgment, Rule 11 sanctions are appropriate. The fact that the district court granted the defendants' motion for summary judgment does not require the district court to also find that the plaintiff filed suit with "improper motive or inadequate investigation." Id. As this court noted in Mars Steel Corp., "Rule 11 is not a fee-shifting statute in the sense that the loser pays." Id.
 
 
 18
 Our review of the record supports the district court's determination that this is not a case that warrants Rule 11 sanctions. While the plaintiff was unable to prevail on the defendants' motion for summary judgment, we cannot say that her claim of racial discrimination was filed with either improper motives or inadequate investigation. Moreover, the defendants have failed to offer any compelling reason for reversing the district court's decision. We are of the opinion that the district court did not abuse its discretion in denying the defendants' motion for Rule 11 sanctions.
 
 IV. CONCLUSION
 The decision of the district court is
 
 19
 AFFIRMED.
 
 
 
 [1]
 The plaintiff also brought a pendent state law claim for retaliatory discharge. Because her federal claims were dismissed, the district court dismissed her pendent state law claim without prejudice, allowing the plaintiff the opportunity to bring the claim in state court. The plaintiff does not appeal this ruling
 
 
 [2]
 28 U.S.C. § 636(b)(1) provides in pertinent part:
 "(b)(1) Notwithstanding any provision of law to the contrary--
 (A) a judge may designate a magistrate to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action. A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate's order is clearly erroneous or contrary to law.
 (B) a judge may also designate a magistrate to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of any motion excepted in subparagraph (A), of applications for posttrial relief made by individuals convicted of criminal offenses and of prisoner petitions challenging conditions of confinement."
 
 
 [3]
 We note that in her complaint, the plaintiff alleges that the fire drill in question occurred on August 4, 1984
 
 
 [4]
 Illinois state regulations require that day care centers provide for a certain number of adults to supervise and care for a specific number of children. Thus, it is necessary that staff members notify the center as soon as possible to report an absence to enable the center to fill the vacancy
 
 
 [5]
 In January of 1986, the staff supervised approximately two hundred and nineteen children, including one hundred and eighty-five whites, twenty-six blacks, and eight Hispanics, and there were approximately fifty-eight employees, fourteen of which were minorities
 
 
 [6]
 Kizer also argues that even though CLC's call-in procedure required that an employee contact the center by 7:15 a.m., CLC never issued a warning unless an employee waited until after 7:30 a.m. to call in. In her brief, the plaintiff contends that "[t]he very fact that the CLC had a secret policy to extend the call-in procedure from 7:15 to 7:30 without telling the Plaintiff can only ... be looked at as a method for the center to give different reasons for giving warnings for late call-in procedures for different violators." The plaintiff's argument that the alleged secret policy demonstrates discrimination fails for two reasons: first, the plaintiff did not call in until 8 o'clock, thus violating what she describes as a "secret policy" by a half hour; second, once again the plaintiff provides no evidence of other persons who waited until 8 o'clock to call the center who were not discharged