Mimi **WAHAB**, Plaintiff–Appellant,

v.

**PORTAL PUBLICATIONS, LTD.,**
Defendant–Appellee.

No. 87–2721.

United States Court of Appeals,
Seventh Circuit.

Argued June 1, 1988.

Decided July 13, 1988.

Marc M. Pekay, Marc M. Pekay, P.C., Chicago, Ill., for plaintiff-appellant.

Arthur Lempert, Layman & Lempert, San Francisco, Cal., for defendant-appellee.

Before WOOD, Jr., FLAUM, and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

Mimi Wahab brought a Title VII sex discrimination action against her former employer, Portal Publications (Portal). She alleged that Portal discharged her because she was female. After a bench trial, the district court entered judgment for Portal. It found that Portal had dismissed Ms. Wahab for legitimate non-discriminatory reasons. Ms. Wahab appeals from that judgment. We affirm.

I

Facts

The evidence at trial reveals the following. Ms. Wahab was hired by Portal in 1979 to be its sales representative for certain parts of Illinois. Portal is a publisher of fine art prints, posters, and note cards; it uses sales representatives to sell its products to retail stores. Ms. Wahab was apparently the only female sales representative in her area who was not part of a husband-wife team. Soon after she began working for Portal, Ms. Wahab fostered a business relationship with a company known as City Products, a buying company for Ben Franklin stores across the country. Pursuant to this relationship, Ms. Wahab sold Portal products to City Products, which then made sales to individual Ben Franklin stores. Because City Products was located in Ms. Wahab's sales region, Ms. Wahab earned a commission on sales made to Ben Franklin stores nationwide. This selling arrangement was apparently uncommon at Portal. The more typical practice was for Portal's sales representatives to "service" retail stores in their areas, and each representative then would earn a commission on individual sales within his or her region. Portal attempted to persuade City Products to allow its sales representatives to service directly Ben Franklin stores. Portal believed it could sell more goods to Ben Franklin stores if its representatives could solicit directly Ben Franklin franchise owners. City Products rejected this arrangement; it preferred to work directly with Ms. Wahab.

Ms. Wahab earned several awards from Portal for sales and for opening new ac-

counts.[1] On one occasion, she received a letter from the president of Portal, Terence Flynn, which stated: "I will not make a sexist comment such as 'you have come a long way baby', but I must confess, Mimi, that I am more than mildly pleased by the progress you have made over the past two years." Ex. 51. On another occasion, Ms. Wahab was honored at a sales meeting with a figurine of a businesswoman carrying a briefcase or portfolio. Ms. Wahab suggests that no male employee had ever received such a figurine, but Portal points out that the figurine was selected for Ms. Wahab by a female employee.

In December 1981, Ms. Wahab learned that Ben Franklin stores would be hosting a trade show in Reno, Nevada in April 1982. Ms. Wahab made plans to attend the show and to prepare a booth for displaying Portal's products. However, on March 22 or 23, Ms. Wahab's supervisor, Fred Jackson, told Ms. Wahab that it would be better if she did not attend the show so that she could remain in Illinois to service her other accounts. Ms. Wahab vehemently disagreed with Mr. Jackson, and a heated discussion took place between the two. According to Ms. Wahab, Mr. Jackson told her that she should stay in her territory, that she did not need the commission from the show because she was a woman, that she was earning enough money anyway, and that Portal intended to take the Ben Franklin account away from her because, as a woman, she did not need the money. Mr. Jackson denies these allegations. He claims that he only told Ms. Wahab that she needed to stay in Illinois so that she could service other accounts, and that he would handle the trade show and give all commissions to Ms. Wahab. Regardless of the substance of their discussion, there is no doubt that the conversation was so acrimonious that Mr. Jackson fired Ms. Wahab.

Mr. Jackson reported this event to his superior, Karl Goldberg, who asked Mr. Jackson not to fire Ms. Wahab. Mr. Jackson then informed Ms. Wahab that she was not fired after all; he allegedly told Ms. Wahab that he and Mr. Goldberg had acted like "two emotional women." Ms. Wahab then wrote a seven-page letter to Mr. Flynn, Portal's president, informing him of the details of her dispute with Mr. Jackson and Mr. Goldberg. The letter did not contain any reference to sex discrimination nor to any remarks by Mr. Jackson that could be considered sexist. Ms. Wahab claims that she told another sales worker, Patrick Groehler, about Mr. Jackson's sexist comments, but Mr. Groehler denies that she told him about such comments.

Although Mr. Jackson rehired Ms. Wahab, the two apparently did not reach agreement on who would attend the trade show. Mr. Jackson and Ms. Wahab both showed up in Reno and soon became embroiled in further debate. Mr. Jackson therefore asked Mr. Goldberg to supervise Ms. Wahab directly. Mr. Jackson also apparently told Mr. Goldberg that he was concerned that Ms. Wahab was not servicing adequately accounts other than City Products. Mr. Goldberg asked Ms. Wahab for a report regarding her other accounts, but Ms. Wahab did not respond. After another customer had complained to Portal about a lack of service from Ms. Wahab, Mr. Goldberg called several customers directly to inquire as to Ms. Wahab's performance. He claims that he was informed that Ms. Wahab had not been servicing some accounts and that Ms. Wahab previously had submitted some false reports. He then spoke with Ms. Wahab and told her that he was considering firing her. After further consultation with Mr. Flynn, Mr. Goldberg fired Ms. Wahab. He took this action even though Ms. Wahab had been commended only a few days before for opening the most new accounts during the prior month. Mr. Goldberg's stated reasons for discharging Ms. Wahab were the false reports she had allegedly filed, her failure to service her accounts, and her opposition to Portal's efforts to service directly Ben Franklin stores. Ms. Wahab then spoke to Mr. Flynn about the situation, and made no

---

**1.** Whenever City Products made a sale to a different Ben Franklin store, Ms. Wahab received credit for opening a new account.

complaint about sex discrimination. Ms. Wahab now claims that Mr. Goldberg's scrutiny of her performance was unusual, and that no male sales representative had been subject to such a careful review. She also points out that Portal hired a male to take over her sales area.

## II

### Findings of the District Court

Immediately after closing arguments, the district court entered oral findings of fact and conclusions of law. Tr. of Sept. 22, 1987 at 68. No written findings were ever entered. The district court began its findings by noting the inherent conflict between Ms. Wahab and Portal regarding the Ben Franklin account. The court noted that it was to Ms. Wahab's advantage that Portal's representatives not directly solicit Ben Franklin stores. However, the court noted that it was to Portal's advantage to change this practice. Thus, the court found that "this difference of intent and purpose was the source of discord between the plaintiff and the defendant company." Id. at 73.

The court acknowledged that Ms. Wahab's performance as a sales representative up until early 1982 had been "satisfactory and indeed exemplary." Id. With respect to the female figurine that Ms. Wahab received as an award for opening the most new accounts, the court found that this award was typical of the type of award often given in the sales business. The court found that the award had been selected by a female employee, and that there was no evidence in the case to suggest that this award was "intended as a sexist or sexist discriminatory award.... Nobody did or said anything to the plaintiff to indicate that this was a sexist discriminatory award or in anyway impugning her gender in anyway. Merely, it was simply an award, an appreciation for her work well done." Id. at 75.

The district court then noted that there was a critical conflict in the testimony regarding the conversation between Mr. Jackson and Ms. Wahab about the Reno trade show. Ms. Wahab contended that Mr. Jackson made sexually derogatory comments, which Mr. Jackson denied. The district court did not credit Ms. Wahab's testimony; it had not been corroborated by Ms. Wahab's actions or by other witnesses. The court noted that Ms. Wahab had never complained to any Portal employee about sexual discrimination, not even in the seven-page complaint letter to Mr. Flynn immediately after the alleged event. Ms. Wahab contended that she told Mr. Groehler about Mr. Jackson's sexist comments. Mr. Groehler, however, who the court said had no interest in the outcome of this suit, denied any such conversation. Thus, the court said that Ms. Wahab "fail[ed] to speak out when there was a duty and an opportunity to speak out." Id. at 86. The court found Ms. Wahab's testimony not to be credible because of this failure.

As a result of this disagreement between Mr. Jackson and Ms. Wahab, the court found that Mr. Jackson concluded that he "just couldn't get along with Miss Wahab." Id. at 82. Mr. Jackson therefore asked Mr. Goldberg to supervise Ms. Wahab. The court then found that Mr. Goldberg requested information from Ms. Wahab about her accounts, but that Ms. Wahab failed to provide information that he requested. The court also found that "there were complaints from customers about Miss Wahab's failure to service ... particular stores," and that this failure was caused by Ms. Wahab's preoccupation with the City Products account. Id. at 83–84. The court, however, made no finding regarding whether Ms. Wahab had falsified reports, nor did it make a finding regarding the significance of the statement to Ms. Wahab by Mr. Flynn that "you've come a long way baby."

After making its factual findings, the court determined that Ms. Wahab had failed to meet her burden of establishing that Portal did not have a legitimate reason for dismissing her. The court said that there was a dispute between Portal and Ms. Wahab about the City Products account. However, the court said that there was no evidence that Portal wanted to take this account away from Ms. Wahab be-

cause she was a woman. Rather, the court noted that Portal wanted to change the practice of dealing with City Products so that Portal's sales representatives could service Ben Franklin stores directly. The court then said that Mr. Goldberg had fired Ms. Wahab because she refused to follow instructions and had been insubordinate. The court expressly said that gender had not been a factor in this decision, and that Portal had always treated Ms. Wahab "in a fair and proper manner." *Id.* at 88.

### III

### Analysis

In any Title VII case, the initial burden of establishing a prima facie case of discrimination rests with the plaintiff. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). The burden then shifts to the defendant to offer a legitimate, nondiscriminatory justification for its action. *Texas Dept. of Community Affairs*, 450 U.S. at 253, 101 S.Ct. at 1093. If the defendant carries this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the defendant's legitimate reasons were a mere pretext for discrimination. *Id.* Of course, the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.* In this case the district court determined that Ms. Wahab had proffered enough evidence in her case-in-chief to justify denial of Portal's oral motion for a judgment in its favor. After the complete trial, however, the court determined that Portal had offered legitimate reasons for dismissing Ms. Wahab, and that Ms. Wahab had not rebutted those reasons.

A trial court's finding of discrimination, or lack thereof, is a finding of fact and reversible only if clearly erroneous. *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). A finding is clearly erroneous when " 'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' " *Id.* (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.* 470 U.S. at 574, 105 S.Ct. at 1512.

We have reviewed the evidence offered by Ms. Wahab and Portal. We are convinced that the judgment of the district court was not clearly erroneous. Ms. Wahab offered very little direct or circumstantial evidence of intentional discrimination. There is no reason to believe that the figurine of a female businesswoman presented to Ms. Wahab was motivated by a sexual animus. Rather, as the district court said, the award was simply an indication of "appreciation for her work well done." Tr. of Sept. 22, 1987 at 75. Similarly, the letter from Mr. Flynn which stated that "I will not make a sexist comment such as 'you have come a long way baby', but I must confess, Mimi, that I am more than mildly pleased by the progress you have made ...," while relevant, certainly did not compel a finding of discrimination.[2] Ms. Wahab also contends that she was a successful sales representative who had earned numerous awards, and that she had been subjected to a level of more exacting scrutiny than her male counterparts. The record is clear, however, that much of Ms. Wahab's sales success stemmed from one account, City Products, and that she had failed to concentrate on accounts other than City Products.

Ms. Wahab also supported her claim of discrimination with her allegation that Mr.

**2.** The district court made no finding about the significance of this letter. This omission, however, does not constitute error—a district court need not comment on every allegation of discrimination before determining that there was

no unlawful sexual motive. *Bartsh v. Northwest Airlines, Inc.*, 831 F.2d 1297, 1304–06 (7th Cir. 1987); *Johnson v. Artim Transp. Sys.*, 826 F.2d 538, 545–46 (7th Cir.1987).

Jackson made blatant derogatory sexual comments when he told her that she should not attend the Reno trade show. If this allegation is true, Ms. Wahab would have a strong case of intentional discrimination. However, we cannot say that the district court was clearly erroneous when it did not credit this testimony. Mr. Jackson denied having made any such comments. More important, Patrick Groehler categorically denied Ms. Wahab's testimony that she told him about Mr. Jackson's comments. Ms. Wahab's testimony therefore was squarely contradicted by a third party. The district court also found it significant that Ms. Wahab had not complained to Portal officials about any acts of sexual discrimination. Of particular interest was the fact that Ms. Wahab wrote a seven-page letter to Mr. Flynn immediately after this event but made no mention of any sexual comments by Mr. Jackson. Under these facts, we have no basis for finding that the district court's credibility determination was clearly erroneous, nor is there a basis for questioning the court's ultimate determination of no discrimination.

Ms. Wahab also argues that it was inappropriate as a matter of law for the district court to require her to have complained to her superiors about Mr. Jackson's sexual comments. She contends that there is no affirmative duty on the victims of discrimination to bring immediate complaints to the offending parties and their supervisors. She therefore claims that the district court erred when it said that Ms. Wahab "fail[ed] to speak out when there was a duty and an opportunity to speak out." Tr. of Sept. 22, 1987 at 86. We agree with Ms. Wahab that Title VII does not require a complainant to take her claims directly to her employers. But, when the district court's oral findings are read in context, it is clear that the district court did not place on Ms. Wahab an affirmative legal duty to complain to her supervisors. Rather, the district court simply found that Ms. Wahab's allegations against Mr. Jackson would have been more believable if she had complained to someone.

This case highlights why written findings of fact and legal conclusions are prefer-able. The district court's oral findings certainly would have been clearer if the court had not used the word "duty" when referring to Ms. Wahab's failure to tell others of Mr. Jackson's comments. However, the approach of the district court was sufficiently clear to convince us that no error was committed. Moreover, we note that the court invited the parties to submit amended findings to correct any ambiguities. Ms. Wahab did not accept this offer.

### Conclusion

The district judge's findings are not clearly erroneous. No legal error was committed. Accordingly, we affirm the judgment of the district court.

AFFIRMED.

HARLINGTON WOOD, Jr., Circuit Judge, concurring.

Although I fully join in affirming this case I am hesitant about suggesting that it is preferable for district judges to decide cases with written findings of fact and conclusions of law. If the district judge who has just finished hearing the evidence and the arguments has the talent by referring to his own trial notes to resolve the case then and there for the parties, I would applaud. I think even the loser would be glad to promptly know where the case stands. How district judges, with a more difficult task than we have here, should handle this type of thing in their own courts I would leave to them. Trial judges can determine for themselves soon enough in their judicial careers whether they have the personal ability to handle it that way or not. Written findings of fact and conclusions of law are no panacea. We regularly have problems with those as well, but that is the nature of this work. Oral findings may not always be as thorough as written findings which are often based on a draft submitted by the prevailing party, but they will be fresh and more balanced, and ordinarily adequate, as in this present case.