Barbara A. SAMUELSON, Plaintiff,

v.

DURKEE/FRENCH/AIRWICK, et al., Defendants.

No. S89–245 (RLM).

United States District Court,
N.D. Indiana,
South Bend Division.

Feb. 8, 1991.

Martin W. Kus, LaPorte, Ind., for plaintiff.

Eric Zalud, Howard Levy, Maynard Buck, Cleveland, Ohio, Roger Benko, South Bend, Ind., for defendants.

## MEMORANDUM AND ORDER

MILLER, District Judge.

Plaintiff Barbara Samuelson alleges that her former employer and supervisor discharged her because of her sex and age and in retaliation for her earlier claim of sex discrimination. She relies on Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act, 29 U.S.C. § 623(a). Defendants Durkee/French/Airwick ("Durkee") and Thomas Havrilesko seek summary judgment on all claims. For the reasons that follow, the court concludes that the defendants are entitled to summary judgment on the claims of sex discrimination and retaliatory discharge, but that Ms. Samuelson is entitled to a trial on her ADEA claim.

### I. Factual Background

Ms. Samuelson began her employment with Durkee on August 20, 1979 as a sales representative. She was the first woman Durkee had hired in her region. Before that, she worked for a year as a sales and servicing representative for another company, servicing as many as fifty-five stores. By 1979, she had worked in the grocery business for thirteen years.

As a Durkee sales representative, Ms. Samuelson sold and ordered spices and sauces, arranged displays for these products, and put such products on the shelves at various grocery stores on her route, which covered portions of northwest Indiana and included both large grocery store chains and small grocer businesses. Durkee sales representatives completed weekly reports, met with the entire sales group on a quarterly basis and for specially-convened meetings, and were formally evaluated on an annual basis. Supervisors occasionally would visit stores while their representatives serviced the grocers.

Mr. Havrilesko became Ms. Samuelson's supervisor in February, 1984, replacing Henry Krafft. Before that, Mr. Havrilesko had been part of Ms. Samuelson's sales group, which then also included Bob Averill, Lawrence Kuskye, Jack Imer, and Jeffrey Wesley. Mr. Havrilesko now works as a sales specialist for Durkee/French, a lesser paid job than that of his former position of sales supervisor.

Durkee first terminated Ms. Samuelson in May, 1984, purportedly as part of a sales force reduction. She filed sex discrimination charges against Durkee with the Equal Employment Opportunity Commission following her dismissal. Durkee and Ms. Samuelson entered into a settlement agreement in relation to those charges, as part of which she returned to her position as a sales representative with Durkee in December, 1984, and information concerning the facts giving rise to her discharge or the EEOC filing were to be removed from her employment records. Upon her return, Ms. Samuelson was assigned some of the same grocers and additional ones in other locations.

Reckitt & Coleman, Inc. ("R & C") purchased Durkee in early 1987. R & C had owned R.T. French ("French"), a competitor of Durkee, since 1926. Following the corporate purchase of Durkee, R & C combined the business of Durkee and French ("Durkee/French"). Former French employee Greg Sacco headed a task force to streamline sales groups in the newly formed Durkee/French division of R & C. After evaluating the employees working for Durkee and French in the Chicago and northwest Indiana areas, Mr. Sacco determined that the areas were over-staffed by seven service and direct sales representatives.

In May, 1987, Sacco formed a group of managers to determine which sales representatives should be eliminated from the Chicago and northwest Indiana areas. The group included Evan Fotopulos and Thomas Havrilesko from Durkee and Barry Riffle and Arnie Koontz from French. Mr. Sacco did not instruct the group as to the number of positions to be eliminated, but simply requested information from them concerning each sales representative in

their area of supervision. Mr. Sacco then examined the information the group provided him, discussed that information with Charles Butler, French's regional sales manager, and determined which employees would be terminated.

Mr. Sacco terminated employees he found to have "less to contribute" to Durkee/French, basing his decision with respect to Ms. Samuelson at least in part on Mr. Havrilesko's recommendation. Mr. Sacco received the following observations from Mr. Havrilesko on the sales representatives in Ms. Samuelson's sales group.

—*Jack Imer (1)*

30–35% volume in territory. 17 years with Durkee—selling skills—good rapport—feels he has been passed by—Strack and Ultra Accounts—14 accounts plus Central twice a week. Call average: 10 per week.

—*Lawrence Kuskye (4)*

Health problems—triple bypass. Current chest pains. Candidate for long term disability. Won't make the cut. 61 years old. Should be retired by his own admission. 30 stores—20 weekly calls.

—*Norman McKitterick (2)*

Ex-store manager (Buy Low). 3 years. 37–year–old. 15 accounts, 15 calls per week. Doesn't need constant supervision. Former manager of a certified store. Fits retail merchandisers mold.

—*Barbara Samuelson (5)*

Early difficulties—fired once-sued to get her job back—EEOC—1985 off 1 year. Ruled in her favor-reinstated. Lawsuit indicated no sufficient grounds for dismissal. 5 years with the company. 47–year–old. Wasn't cutting the mustard. Lacks cooperation. Shows up late. Performance has turned around since then. Still sporadic in performance. No consistency. 20 accounts, 14 weekly average. No position within new structure.

—*Jeffrey Wesley (3)*

Part-time at first Merchandiser. Good salesperson. Aggressive attitude. Keeper—solicit new business. Tendency to resist authority. Not very tactful. 12 accounts–15 weekly calls. Needs training retail service merchandiser probability.

—*Walter Wolfe (6)*

Disability candidate. Former supervisor now reporting to Tom. Emphysema, nerves, asthma. 62–year–old candidate for disability. Health a major concern.

Ms. Samuelson was the only sales representative from this group whom Mr. Sacco decided to discharge. Mr. Sacco points out that she had the fifth best rating of the six sales representatives in her group; the only lower-rated representative, Walter Wolfe, voluntarily retired during the merger between Durkee and French. Those six sales representatives had the following ratings as of May 8, 1987:

Jack Imer—Low Excellent: "excellent" in 8 categories and "good" in 2 categories;

Norman McKitterick—Low Excellent: "excellent" in 7 categories and "good" in 3 categories;

Larry Kuskye—High Good: "excellent" in 1 category and "good" in 9 categories;

Jeff Wesley—Medium Good: "good" in 9 categories and "fair" in 1 category;

Barbara Samuelson—Good: "good" in 8 categories and "fair" in 2 categories; and

Walter Wolfe—High Fair: "good" in 2 categories and "fair" in 8 categories.

A sales personnel performance report for the first half of 1987 shows the following statistics with respect to the above sales group:

Present Actual vs. Targeted Workload Achievement

| | | |
|---|---|---|
| 1. | Larry Kuskye | 1.17 |
| 2. | Norman McKitterick | 1.05 |
| 3. | Jack Imer | .90 |
| 4. | Jeffrey Wesley | .88 |
| 5. | Barbara Samuelson | .87 |
| 6. | Walter Wolfe | .54 |

Before making his decision with respect to Ms. Samuelson, Mr. Sacco discussed her performance with Mr. Havrilesko and spoke with her for ten minutes, due to his concern with proceeding "cautiously" in light of her previous EEOC charge. In a May 31, 1987 letter to Mr. Sacco, Ms. Samuelson wrote expressing her desire to be retained as a Durkee/French sales representative. On June 3, 1987, Ms. Samuelson

met again with Mr. Sacco and was told of her termination. She was 48 years old.

Ms. Samuelson received the following employment performance evaluations while at Durkee:

In May, 1982, Mr. Krafft evaluated Ms. Samuelson as "excellent" in every category. He noted that Ms. Samuelson was a "take charge" person.

In May, 1983, Mr. Krafft evaluated her as "good" in every category.

In March, 1985, Mr. Havrilesko evaluated Ms. Samuelson as "excellent" in job knowledge, "good" in work output, judgment, cooperation, initiative, flexibility, and interpersonal relations, and "fair" in dependability and communication. Mr. Havrilesko noted:

She has the ability to sell pre set surveys in large quantities. She also has good rapport at headquarters level.

She needs to utilize and budget working hours to gain the most productivity for the time spent. To follow her assigned route more closely.

She will be worked with in an effort to strengthen her work habits and time management. She will also be assigned work projects with her peers. She will be assigned more prospects to call on.

Ms. Samuelson notes her disappointment with Mr. Havrilesko's assessment of her abilities on the 1985 evaluation.

In March, 1986, Mr. Havrilesko rated Ms. Samuelson as "excellent" in work output, judgment, and initiative, "good" in dependability, cooperation, flexibility, interpersonal relations, and work habits, and "fair" in communication. He noted further:

Barbara has become very proficient at carrying full line distribution, as much as possible, in all accounts. She has also developed a great rapport with all of her accounts over the last calendar year.

If Barbara would learn to answer written communication and correspondence more quickly it would benefit her and the company greatly.

I would like to assign Barbara to a Wholesale Headquarters call. She needs the experience.

In March, 1987, Mr. Havrilesko rated Ms. Samuelson "excellent" in cooperation, "good" in job knowledge, work output, judgment, dependability, initiative, flexibility, interpersonal relations, and work habits, and "fair" in communication, and commented:

Barbara has the ability to sell surveys and displays with ease. She has a good rapport with some customers.

Barbara could improve her overall performance by improvement of her written communications with Durkee management, and a more timely return of requested correspondence.

Barbara will be assigned more major retail headquarter calls to help her selling ability.

Ms. Samuelson also received several recognition awards from her employment at Durkee that are not reflected in the evaluations. In 1981, she was awarded the Creative Merchandising Award in her region. In 1984, Durkee recognized Ms. Samuelson in its national publication for field sales personnel. Additionally, throughout her employment with Durkee, Ms. Samuelson received various bonus payments and salary increases on a frequent basis: her annual salary began at about $10,800.00 in 1979, and had reached $21,000.00 by the more recent termination.

Eight sales representatives were retained after the reduction in force: Val Koble, a 51–year–old female in the Chicago Division; Jack Imer, a 50–year–old male; Mike Adamcek, a 47–year–old male; Audrey Heitman, a 45–year–old female; Patricia Meunier, a 42–year–old female; another female employee named Michelle Koster; and two male employees younger than Ms. Samuelson, Jeff Wesley and Norm McKitterick.

Ms. Samuelson contends that Mr. Havrilesko made a sexist remark concerning her, before she began working for Durkee. Specifically, she contends that Mr. Havrilesko told a Jim's Fiesta Market employee that "[a] woman would not last" in the job

of sales representative. In her deposition, Ms. Samuelson was unable to remember who heard Mr. Havrilesko's remark. She had been working in Jim's Fiesta Market for M.J. Holland at the time of the alleged remark.

Ms. Samuelson also reports that Mr. Havrilesko and his wife expressed displeasure when the plaintiff received a sales area that Mr. Havrilesko had serviced temporarily and sought as his regular route. Mr. Havrilesko apparently wanted that sales route because it would allow him also to engage in the real estate business in the same area. Mr. Havrilesko claimed he lost money because the sales route was given to her. Ms. Samuelson further claims that Mr. Havrilesko harassed her and that she had problems with correspondence with him.

In terms of her age discrimination claim, Ms. Samuelson notes that two younger sales representatives, Jeff Wesley and Norm McKitterick, were retained in the northwest Indiana area, and that Durkee/French retained only two representatives (Jack Imer and Larry Kuskye) older than she. Mr. Wesley and Mr. McKitterick had less seniority than she in the company. Mr. Havrilesko made frequent comments about the quality of Mr. McKitterick's work being superior to that of Ms. Samuelson. Although uncertain whether such comments about Mr. McKitterick were ever made with relation to his age, she states that she would often be assigned temporarily to younger representatives' stores to "straighten them out" and then have the assignments taken from her once the condition of the stores improved. Ms. Samuelson alleges that poor work completed by these sales representatives was often attributed to her.

## II. Standard of Review on Summary Judgment

A party seeking summary judgment must demonstrate that no genuine issue of fact exists for trial and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Certain Underwriters of Lloyd's v. General Accident Ins. Co. of America,* 909 F.2d 228, 231 (7th Cir.1990). If that showing is made and the motion's opponent would bear the burden at trial on the matter that forms the basis of the motion, the opponent must come forth with evidence to show what facts are in actual dispute. *Lujan v. National Wildlife Federation,* —— U.S. ——, 110 S.Ct. 3177, 3186, 111 L.Ed.2d 695 (1990); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Sims v. Mulcahy,* 902 F.2d 524, 540 (7th Cir.), *cert. denied* —— U.S. ——, 111 S.Ct. 249, 112 L.Ed.2d 207 (1990). If he fails to do so, summary judgment is proper. *Tatalovich v. City of Superior,* 904 F.2d 1135, 1142 (7th Cir.1990). A genuine factual issue exists only when there is sufficient evidence for a jury to return a verdict for the motion's opponent. *Hines v. British Steel Corp.,* 907 F.2d 726, 728 (7th Cir.1990). Summary judgment should be granted if no reasonable jury could return a verdict for the motion's opponent. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Baucher v. Eastern Indiana Production Credit Ass'n,* 906 F.2d 332, 334 (7th Cir.1990).

The parties cannot rest on mere allegations in the pleadings, *Koclanakis v. Merrimack Mut. Fire Ins. Co.,* 899 F.2d 673, 675 (7th Cir.1990), or upon conclusory allegations in affidavits. *Mestayer v. Wisconsin Physicians Service Ins. Corp.,* 905 F.2d 1077, 1079 (7th Cir.1990). The court must draw any permissible inferences from the materials before it in favor of the non-moving party, *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Illinois Bell Telephone Co. v. Hanes and Co., Inc.,* 905 F.2d 1081, 1087 (7th Cir. 1990), as long as the inferences are reasonable. *Renovitch v. Kaufman,* 905 F.2d 1040, 1044 (7th Cir.1990). The non-moving party must show that the disputed fact is material, or outcome-determinative, under applicable law. *Johnson v. Pelker,* 891 F.2d 136, 138 (7th Cir.1989).

■ Even on an issue of intent, summary judgment is proper if the party with the burden at trial presents no indication of the

necessary motive or intent. *Illinois Bell Telephone Co.*, 905 F.2d 1081, 1087 (7th Cir.1990); *Holland v. Jefferson Nat'l Life Ins. Co.*, 883 F.2d 1307 (7th Cir.1989).

The court reviews the defendants' motion with these standards in mind.

### III. Age and Sex Discrimination

Similar standards structure the analyses of Ms. Samuelson's claims of age and sex discrimination. With respect to age, 29 U.S.C. § 623(b) provides:

> It shall be unlawful for an employment agency to fail or refuse to refer for employment, or otherwise discriminate against, any individual because of such individual's age, or to classify or refer for employment any individual on the basis of such individual's age.

To make a *prima facie* case of discrimination under the ADEA, Ms. Samuelson must show that (1) she was within the protected age group, (2) she was performing according to Durkee's legitimate expectations, (3) she was discharged, and (4) others in the protected class were treated more favorably. *Oxman v. WLS–TV*, 846 F.2d 448, 452 (7th Cir.1988); *see also Brown v. M & M/Mars*, 883 F.2d 505 (7th Cir.1989).

Should Ms. Samuelson meet that burden, the burden of production would shift to the defense to articulate a legitimate, non-discriminatory reason for its actions. *Visser v. Packer Engineering Associates*, 909 F.2d 959 (7th Cir.1990); *Beard v. Whitley County REMC*, 840 F.2d 405, 411 (7th Cir. 1988); *Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359, 1364 (7th Cir.1988); *Ritter v. Allied Products Corp.*, 725 F.Supp. 989, 990 (N.D.Ind.1989). Ms. Samuelson then may attempt to show that the articulated reason was a pretext for discrimination, which may be done either by showing that a discriminatory reason more likely motivated Durkee or that the proffered explanation is unworthy of belief. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981); *Andre v. Bendix Corp.*, 841 F.2d 172, 175 (7th Cir.), *cert. denied*, 488 U.S. 855, 109 S.Ct. 144, 102 L.Ed.2d 116 (1988). Ms. Samuelson at all times bears the burden of proving that Durkee intentionally engaged in discrimination. *Morgan v. Harris Trust and Savings Bank*, 867 F.2d 1023, 1026–1027 (7th Cir.1989).

With respect to gender discrimination, 42 U.S.C. § 2000e–2 renders it unlawful for an employer to discharge any individual because of the individual's sex. In a Title VII disparate treatment action, the plaintiff first has the burden of establishing a *prima facie* case of employment discrimination. *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). To establish a *prima facie* case of sex discrimination, Ms. Samuelson must show: (1) that she was female, (2) that her job performance was satisfactory, (3) that she was discharged, and (4) that Durkee continued to have positions for persons with her qualifications. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824; *Smith v. General Scanning, Inc.*, 876 F.2d 1315, 1318 (7th Cir.1989).

If Ms. Samuelson establishes her *prima facie* case of sex discrimination in employment, Durkee must then posit a legitimate, nondiscriminatory explanation as to why she was dismissed and/or other sales representatives were preferred. *Jones v. Jones Bros. Constr. Corp.*, 888 F.2d 1215 (7th Cir.1989); *Namenwirth v. Board of Regents*, 769 F.2d 1235 (7th Cir.1985), *cert. denied*, 474 U.S. 1061, 106 S.Ct. 807, 88 L.Ed.2d 782 (1986); *Reich v. New York Hospital*, 513 F.Supp. 854 (S.D.N.Y.1981). If Durkee provides such a reason, Ms. Samuelson must then demonstrate that the articulated explanation was a mere "pretext" for unlawful discrimination. *Andre v. Bendix Corp.*, 841 F.2d at 172; *Wahab v. Portal Publications, Ltd.*, 851 F.2d 1011 (7th Cir.1988). Throughout this burden-shifting, however, the overall burden of persuasion remains with the plaintiff in a Title VII action. *McQuillen v. Wisconsin Education Assoc. Council*, 830 F.2d 659 (7th Cir.1987), *cert. denied*, 485 U.S. 914, 108 S.Ct. 1068, 99 L.Ed.2d 248 (1988).

■ As is frequently true in reduction in work force cases, the plaintiff's *prima facie* case cannot be analyzed wholly discretely from the plaintiff's showing of pretext. Under such circumstances, it is permissible to collapse the inquiry and focus on the showing of pretext. *Holmberg v. Baxter Health Care Corp.*, 901 F.2d 1387, 1391 (7th Cir.1990). Accordingly, the court assumes that Ms. Samuelson has made a sufficient showing to establish a *prima facie* case: she was in the protected age group; although her performance record fell below those of others in her sales group, she was performing her job well enough that she would not have been discharged but for the reduction in force; she was discharged; and others not in the protected class were treated more favorably in the sense that younger workers with less seniority (and two older workers, as well) were not discharged.

■ Durkee justifies its termination of Ms. Samuelson with evidence that a reduction in force occurred at the time of such discharge. The Durkee/French merger evidences a sufficient economic change to require a reduction in force; that need satisfies the defendants' obligation to articulate a legitimate, nondiscriminatory reason for discharging Ms. Samuelson. *Holly v. Sanyo Mfg.*, 771 F.2d 1161 (8th Cir.1985); *Zick v. Verson Allsteel Press Co.*, 644 F.Supp. 906 (N.D.Ill.1986), *aff'd*, 819 F.2d 1143 (7th Cir.1987); *Bechold v. IGW Systems, Inc.*, 635 F.Supp. 695 (S.D.Ind.1986), *aff'd*, 817 F.2d 1282 (7th Cir.1987). However, the mere existence of economic reasons for dismissing an employee does not eliminate the possibility that discrimination also occurred. *Tice v. Lampert Yards, Inc.*, 761 F.2d 1210 (7th Cir.1985). Summary judgment requires a showing that the undisputed facts fail to evidence discriminatory motives. *Trembath v. St. Regis Paper Co.*, 753 F.2d 603 (7th Cir.1985). Both discriminatory and non-discriminatory charges may occur in the context of an overall reduction in force. *E.E.O.C. v. Jones & Laughlin Steel Corp.*, 627 F.Supp. 126 (N.D.Pa.1985).

Ms. Samuelson claims that the defendants' articulated economic reasons were merely a pretext for their true motivation: to discharge her in favor of younger, (arguably) more productive, male sales representatives in her group. The record intertwines the facts related to both sides' assertions.

Ms. Samuelson cogently organizes the evidentiary support for her pretext argument, and one of those sub-arguments is sufficient to foreclose summary judgment on her age claim. The court cannot, however, agree that any of the points she makes, individually or in concert, satisfy her burden of coming forth with evidence of pretext sufficient to withstand a motion for directed verdict or involuntary dismissal on her sex discrimination claim.

A. Pretext: the ADEA Claim

■ Mr. Havrilesko's memorandum to Mr. Sacco discussed six sales representatives and mentioned the ages of four: 62–year–old Wolfe and 61–year–old Kuskye, both of whom retired; 47–year–old Samuelson; and 37–year–old McKitterick, who was retained. The memorandum ignored the ages of 50–year–old Imer and Wesley, who was younger than Ms. Samuelson; both were retained. Accordingly, the memorandum mentioned the ages of four persons, two older than Ms. Samuelson and one younger; it omitted the ages of two persons, one older than Ms. Samuelson and one younger.

Mr. Havrilesko's reason for including some ages is not easily discerned; the defendants have offered no explanation. One reasonable inference—perhaps not the only one—is that Mr. Havrilesko believed age to be a pertinent factor in deciding who should remain. If the trier of fact so infers, Mr. Havrilesko's comment as to Ms. Samuelson, "47–year–old ... No position within new structure", might lead to a finding of age discrimination.

Durkee relied at least in part on Mr. Havrilesko's recommendations in deciding who to retain and who to discard. The performance ratings demonstrated a hair's width of difference between Ms. Samuelson (8 "goods", 2 "fairs", .87 ratio between

actual and targeted achievement) and Mr. Wesley (9 "goods", 1 "fair", .88 ratio). The kindest observation Mr. Havrilesko made with respect to Ms. Samuelson ("Performance has turned around since then") pales in comparison to his observations about Mr. Wesley ("Good salesperson. Aggressive attitude. Keeper-solicit new business"). Mr. Havrilesko did not mention Mr. Wesley's age.

The trier of fact also, or alternatively, might infer that Mr. Havrilesko had reason to believe that Mr. Sacco or Mr. Butler would view age as pertinent and that age was so viewed; again, such an inference might lead to a finding for Ms. Samuelson on her ADEA claim.

■ While to commend or choose a younger employee over an older one is not discriminatory, even if the former is described as a "bright, intelligent, knowledgeable young man", *Merrick v. Farmers Ins. Group*, 892 F.2d 1434 (9th Cir.1989), the ADEA is violated if age is a determining factor, assuming the older employee is at least forty years old. *Visser v. Packer Engineering Associates*, 909 F.2d 959 (7th Cir.1990); *Metz v. Transit Mix, Inc.*, 828 F.2d 1202 (7th Cir.1987). Ms. Samuelson has come forward with sufficient evidence of pretext to defeat summary judgment on her age claim.

Certainly, the reference to the employees' ages are ambiguous, and the trier of fact ultimately might find them to have been meaningless. "But the task of disambiguating ambiguous utterances is for trial, not for summary judgment." *Shager v. Upjohn Co.*, 913 F.2d 398, 402 (7th Cir. 1990). Reference to age, coupled with Durkee's retention of only two older members of the plaintiff's sales group, and fortified by Ms. Samuelson's assertion that she often was used on sales and servicing routes and then replaced by the younger sales representatives, could lead a trier of fact to conclude that Ms. Samuelson's age was a determining factor in Mr. Havrilesko's decision to recommend her termination and in Durkee's decision to terminate her.

Summary judgment is appropriate in an age discrimination case when a plaintiff fails to show a *prima facie* case of age discrimination or that the employer's proffered reasons for the adverse act were pretextual. *Komel v. Jewel Companies*, 874 F.2d 472, 472 (7th Cir.1989); *Jayasinghe v. Bethlehem Steel Corp.*, 760 F.2d 132, 134–35 (7th Cir.1985). Ms. Samuelson has met her burden of coming forward with evidence demonstrating a genuine issue of fact as to the motives of Durkee and Mr. Havrilesko in discharging her in June, 1987. Ms. Samuelson's presentation of more than a scintilla of evidence supporting the existence of an illegitimate motive is enough to preclude summary judgment on her ADEA claim. *Visser v. Packer Engineering Associates*, 909 F.2d 959 (7th Cir. 1990).

### B. Pretext: Sex Discrimination

■ The listing of employees' ages does not, of course, support an inference of discrimination based on sex. Ms. Samuelson offers several arguments in support of her contention that Durkee's articulated reason for her discharge was a pretext for gender discrimination.

■ *1. Job Performance.* Several of her contentions with respect to pretext relate to her job performance. She describes her work record as exemplary. Her self-descriptions of her abilities, qualifications, and performance are insufficient to raise a fact issue, *Weihaupt v. American Medical Ass'n*, 874 F.2d 419, 424 (7th Cir.1989); *Williams v. Williams Electronics, Inc.*, 856 F.2d 920, 924–25 (7th Cir.1988), but she can point to the record in support of her assertion. Neither Mr. McKitterick nor Mr. Wesley received the awards and recognitions bestowed upon her; her performance evaluations were more than satisfactory; she received annual pay increases; she had a good rapport with area retail grocers.

■ These arguments, however, poorly fit a reduction in force case. In other contexts, evidence of good performance is highly relevant to show pretext when inadequacy of job performance is offered as a justification for termination. *Graefenhain v. Pabst Brewing Co.*, 827 F.2d 13 (7th

Cir.1987); *Rengers v. WCLR Radio Station,* 825 F.2d 160 (7th Cir.1987). Ms. Samuelson has not challenged Durkee's asserted economic reason for a reduction in force generally; she maintains only that she, rather than another, should have survived the reduction in force. Durkee does not contend that Ms. Samuelson's performance was so poor or even so middling that she would have been discharged but for the reduction in force. Accordingly, the proper inquiry for pretext purposes is not whether Ms. Samuelson was performing her job well—a proposition embraced in the assumption that she has established a *prima facie* case—but rather whether a comparison of her performance to those retained in employment creates an inference that performance was not the true reason for her discharge.

The record says nothing of whether her rapport with customers exceeded that of other Durkee sales representatives and is only sketchy as to whether her pay increases exceeded those of other Durkee sales representatives. The record provides a comparison of performance evaluations and indicates that while Ms. Samuelson's evaluations were good, her most recent evaluations were not as good as those of the employees who were not discharged. While the sales representatives who remained with Durkee may not have achieved the recognitions Ms. Samuelson earned in 1981 and 1984, Durkee's asserted rationale for its 1987 decision was based primarily on recent performances; thus, Ms. Samuelson's awards do not undercut the asserted non-discriminatory reason.

*2. Class–Based Comparisons.* Ms. Samuelson also notes that she was the only woman in her group and that two males were retained while she was discharged. That she was the sole woman reflects, if anything, the predecessor company's hiring practices rather than the successor company's decision to discharge Ms. Samuelson; without information concerning the applicants for sales representative positions, the statistic has no probative value. *See Mays v. Chicago Sun–Times,* 865 F.2d 134, 137 n. 2 (7th Cir.1989). Retention of the males, whose performance evaluations were superior to those of Ms. Samuelson (if only marginally so with respect to Mr. Wesley) does not undercut Durkee's articulated basis for making the decision of who to discharge.

*3. 1984 Discharge and Reinstatement.* Ms. Samuelson points to her earlier reinstatement as evidence of pretext. This thesis, however, depends on an inference that cannot be drawn. If Mr. Havrilesko influenced Ms. Samuelson's discharge in 1984 due to her sex, a factfinder could infer that his gender bias infected the 1987 discharge decision as well, in light of his prominent role in providing subjective data upon which the 1987 decision was based. The materials before the court, however, do not permit the inference that would constitute the first link of this chain of inferences: no evidence would allow a reasonable trier of fact to infer that the 1984 discharge was gender-based.

 All information before the court concerning the 1984 events is uncontradicted: Ms. Samuelson was discharged and filed a claim of sex discrimination; Durkee investigated Mr. Havrilesko's allegations concerning the reasons for the discharge and found the allegations to be untrue; Durkee agreed to reinstate Ms. Samuelson. There is no indication, however, that either Durkee or Mr. Havrilesko conceded that the initial discharge was gender-based. Durkee doubtlessly was motivated by the doctrine that disproving the employer's articulated non-discriminatory reason is among the methods of proving pretext, *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981); *Shager v. Upjohn Co.,* 913 F.2d 398, 401 (7th Cir. 1990), but a Title VII claimant also must show that the articulated reason was a pretext for discrimination. *Reeder–Baker v. Lincoln Nat'l Corp.,* 834 F.2d 1373 (7th Cir.1987); *Pollard v. Rea Magnet Wire Co.,* 824 F.2d 557 (7th Cir.), *cert. denied,* 484 U.S. 977, 108 S.Ct. 488, 98 L.Ed.2d 486 (1987). Ms. Samuelson might have been able to meet that burden in 1984, but this record does not contain such evidence. That Mr. Havrilesko has not denied dis-

criminatory intent does not constitute the necessary proof.

In a related argument, Ms. Samuelson also notes that the defendants violated the 1984 settlement agreement by considering the earlier discharge in 1987. Mr. Havrilesko's memorandum to Mr. Sacco reported, with less than complete accuracy, "fired once-sued to get her job back–EEOC–1985 off 1 year." Nothing in the record suggests that this reference harmed her; the only evidence in the record indicates that Durkee, once burned, chose to proceed more cautiously before discharging Ms. Samuelson a second time. In any event, it is unclear how this breach (if it was such) of the 1984 agreement tends to show motivation based on gender.

■ *4. Mr. Havrilesko's Sexist Statement.* Ms. Samuelson also relies on an alleged statement by Mr. Havrilesko made just before she began working for Durkee to the effect that she would not last because women could not perform as well. In light of Mr. Havrilesko's role in the ultimate discharge decision, admissible evidence of such a statement would easily suffice as pretext evidence, at least with respect to the Title VII claim. *Wahab v. Portal Publications, Ltd.,* 851 F.2d 1011 (7th Cir.1988). The record before the court, however, indicates that Ms. Samuelson has no admissible evidence of such a statement.

In her deposition, Ms. Samuelson testified that another person, whose name she no longer recalls, told her that Mr. Havrilesko made the statement. Ms. Samuelson's testimony of the unidentified person's statement, if offered to prove the truth of the assertion that Mr. Havrilesko so spoke, would be hearsay, Fed.R.Evid. 801(c), and inadmissible, Fed.R.Evid. 802, unless subject to an exception to the hearsay rule. No hearsay exception would encompass the unidentified person's statement.

*5. Combination of Facts.* For the reasons discussed above, none of Ms. Samuelson's claimed indicia of pretext undercut Durkee's stated reason for the discharge decision. Accordingly, the claimed indicia have no greater force in concert.

Because Ms. Samuelson has not met her burden of coming forward with evidence, sufficient to withstand a motion for directed verdict or involuntary dismissal, that Durkee's stated reason for her discharge was a pretext for gender-based discrimination, the defendants are entitled to summary judgment. *Williams v. Williams Electronics, Inc.,* 856 F.2d 920 (7th Cir.1988).

### IV. Retaliatory Discharge

To establish that she was the victim of a retaliatory discharge in violation of Title VII, Ms. Samuelson must show a *prima facie* case by demonstrating that: (1) she engaged in protected opposition to Title VII discrimination or participated in Title VII proceedings; (2) she suffered adverse action by Durkee subsequent to or contemporaneous with such opposition or participation; and (3) there is a causal connection between the protected activity and the adverse employment action, which may be satisfied by evidence of circumstances that justify an inference of retaliatory motive. *Collins v. Illinois,* 830 F.2d 692, 702 (7th Cir.1987); *Jennings v. Tinley Park Community Consolidated School District No. 146,* 796 F.2d 962, 966–967 (7th Cir.1986), *cert. denied,* 481 U.S. 1017, 107 S.Ct. 1895, 95 L.Ed.2d 502 (1987); *Burrus v. United Telephone Co.,* 683 F.2d 339 (10th Cir.), *cert. denied,* 459 U.S. 1071, 103 S.Ct. 491, 74 L.Ed.2d 633 (1982).

■ To draw an inference of retaliatory motive, the court should examine the time elapsed between the plaintiff's Title VII conduct and the employer's alleged retaliation. *Oliver v. Digital Equipment Corp.,* 846 F.2d 103 (1st Cir.1988); *Jennings v. Uniroyal Plastics Co., Inc.,* 50 FEP Cases (BNA) 639, 1989 WL 125601 (N.D.Ind. 1989); *Howard v. Holmes,* 656 F.Supp. 1144 (S.D.N.Y.1987).

If Ms. Samuelson establishes her *prima facie* case, then the burden shifts to Durkee to articulate a legitimate, non-discriminatory reason for the adverse action. *Hale v. Marsh,* 808 F.2d 616 (7th Cir.1986); *Womack v. Munson,* 619 F.2d 1292, 1296

(8th Cir.1980), *cert. denied,* 450 U.S. 979, 101 S.Ct. 1513, 67 L.Ed.2d 814 (1981).

The evidence in the record supports no inference that Ms. Samuelson was discharged from Durkee in 1987 in retaliation for filing her 1984 charge with the EEOC. She has suggested no connection at all between the two events. Perhaps Mr. Havrilesko saw the 1987 reduction in force as an opportunity to finally "get rid of her", but such an inference receives, at best, uncertain support from the record. Even if such an inference could be drawn, the time elapsed between Ms. Samuelson's Title VII protected conduct and her final discharge is lengthy enough to discount the possibility of a connection between the two events.

Following the 1984 discharge, Durkee voluntarily reinstated Ms. Samuelson and promptly and repeatedly raised her pay, conduct not often indicative of vindictiveness. The record simply fails to suggest that Ms. Samuelson could present evidence sufficient to make a *prima facie* case under Title VII for retaliatory discharge. Durkee is entitled to judgment as a matter of law on this claim.

### V. Conclusion

For the foregoing reasons, the court now GRANTS IN PART the defendants' motion for summary judgment on the plaintiff's Title VII claims of sex discrimination and retaliatory discharge and DENIES the motion with respect to the plaintiff's ADEA claim.

SO ORDERED.